George COREY, Trust Fund, Plaintiff,

v.

NEW YORK STOCK EXCHANGE, Defendant.

No. G78–672 CA5.

United States District Court, W. D. Michigan, S. D.

May 15, 1980.

George Corey, pro se.

Richard E. Rassel, Jere D. Johnston, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for defendant.

OPINION

DOUGLAS W. HILLMAN, District Judge.

The plaintiff, George Corey, Trustee for George Corey Trust Fund, has initiated this civil action seeking punitive damages from the New York Stock Exchange (hereinafter "NYSE"), due to alleged irregularities in an arbitration proceeding sponsored by the defendant. The defendant has moved for summary judgment on grounds of arbitral immunity, failure to state a claim, and collateral estoppel. For the reasons that follow, I grant that motion.

THE FACTS

Beginning in 1965, plaintiff began to invest in the stock market, having retired from and disposing of the glass business he owned. Plaintiff's long-time friend, Mr. Gordon C. Wright, was at that time an account executive with the brokerage firm, Merrill, Lynch, Pierce, Fenner & Smith, Inc., (hereinafter Merrill, Lynch) a member of the New York Stock Exchange. Wright advised the plaintiff concerning his stock transactions.

In 1968, Wright suffered a paralyzing stroke. After a period of convalescence, however, he returned to Merrill, Lynch and reinitiated his business relationship with the plaintiff. Plaintiff's portfolio remained dormant throughout the broker's absence.

In 1971, plaintiff had his portfolio evaluated by Forbes Magazine. The reply analysis he received advised immediate liquidation of his assets. Plaintiff alleges that Wright, upon being confronted with this assessment of plaintiff's portfolio, simply threw the Forbes letter in the wastebasket and advised the plaintiff that he had no reason to be concerned.

In 1972 and 1973, plaintiff invested heavily in the stock market, allegedly because of Wright's advice. Due to lingering illness related to his previous stroke, Wright retired in 1973 and the plaintiff's margin account was transferred to another Merrill, Lynch broker. As the stock in plaintiff's portfolio depreciated in value, plaintiff came under increasing financial pressure to meet the margin requirements of his account. In order to maintain his position, plaintiff was eventually compelled to liquidate holdings in his portfolio. Because of the forced liquidation, plaintiff alleges he lost more than $175,000. He charges further that this loss resulted directly from Wright's impaired judgment and from negligence on the part of Merrill, Lynch because the company permitted Wright's return to employment before the broker was mentally or physically capable of intelligently advising customers.

Under Article VIII of the Constitution of the NYSE, a non-member has the *option* of submitting to arbitration his claims against member brokerage corporations. Article VIII provides:

"Sec. 1. Any controversy between parties who are members, allied members, member firms or member corporations shall, at the instance of any such party, and any controversy between a non-member and a member or allied member of member firm or member corporation arising out of the business of such member, allied member, member firm or member corporation, or dissolution of a member firm or member corporation, shall, at the instance of such non-member, be submitted for arbitration, in accordance with the provisions of the Constitution and the Rules of the Board of Directors."

Although plaintiff was not compelled to submit to arbitration, on April 28, 1976, he executed a written submission of his "non-member" dispute with Merrill, Lynch. This submission reads in part:

"We, the undersigned parties, hereby submit to arbitration by Arbitrators selected in accordance with Paragraph IV.

B.1. of the within submission the matter in controversy between us and all the matters, claims and counterclaims relating thereto, set forth in the statements of the parties, annexed hereto, and we agree to abide by and perform any award rendered pursuant to this agreement, and we do further agree that a judgment of any court having jurisdiction thereof may be entered on said award and to that end do voluntarily submit ourselves to the jurisdiction of said court."

Thereafter, pursuant to the above, hearing sessions were held before a panel of arbitrators in Detroit, Michigan, on September 14, 1976, and January 18, 1977. The selection of the arbitrators as well as the ground rules for conducting the arbitration were governed by arbitration rules established by the NYSE. At all times, plaintiff chose to appear without counsel. On March 30, 1977, the arbitrators rendered a decision dismissing plaintiff's claim and assessing $700 costs against him. Plaintiff did not appeal this ruling.

In early 1978, plaintiff sought to vacate the arbitrators' decision in a suit filed in Ingham County, Michigan. In that complaint, plaintiff maintained that attorneys for Merrill, Lynch and the NYSE conspired to deprive him of a fair hearing. He alleged that the arbitrators refused to allow him to submit evidence, that they dominated the proceedings with the purpose of defeating plaintiff's claims, and that they postponed hearings over his objections. Plaintiff further contended that at least three of the arbitrators were themselves involved in the negotiation of securities, contrary to the Stock Exchange's arbitration rules. Plaintiff sought relief in the amount of $125,000 damages, plus $1,000,000 for mental anguish.

On May 30, 1978, Merrill, Lynch moved for accelerated judgment of the case. The corporation alleged that pursuant to the submissions, the arbitrators' decision was final and binding on the parties. Further, that plaintiff's suit· was an impermissible collateral attack on the judgment, and if viewed as an appeal, plaintiff's claim was untimely. On July 31, 1978, Judge Michael G. Harrison granted the corporation's motion and dismissed the complaint with prejudice.

On August 28, 1978, plaintiff again filed suit in Ingham County Circuit Court. In this action, plaintiff named the NYSE as the defendant and alleged irregularities, negligence and malfeasance on the part of defendant's counsel during the process of the prior arbitration hearing. In essence, plaintiff repeated the allegations of his previous suit. He sought $1,000,000 in punitive damages for mental anguish resulting from the defendant's "unwarranted actions". On September 25, 1978, defendant NYSE removed that case to this court.

On June 29, 1979, defendant moved for summary judgment. Defendant argues that plaintiff's present suit, like his previous state court action, is an impermissible collateral attack on the arbitrators' decision. Defendant also contends that the NYSE is immune from suit because of arbitral immunity, and that the previous dismissal of plaintiff's action against Merrill, Lynch with prejudice acts as collateral estoppel. The Exchange requested oral argument. However, plaintiff, acting pro se, has asked the court to waive oral argument and decide the motion on the written record. For the reasons that follow, I grant defendant's motion and dismiss plaintiff's complaint.

## DISCUSSION

### I. The Federal Arbitration Act.

The Federal Arbitration Act (9 U.S.C. § 1, *et seq.*) makes irrevocable agreements to arbitrate disputes concerning transactions "involving commerce". In this regard, see 9 U.S.C. § 2, which reads in part:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a con-

**54**

tract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

■ Moreover, where the Federal Arbitration Act enforces agreements to arbitrate, the Act controls and governs the arbitration in question, including the means of securing judicial review. *See, Coenen v. R. W. Pressprich & Co.*, 453 F.2d 1209 (2d Cir.), *cert. denied*, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972).

■ In his complaint, plaintiff essentially argues that in the course of the previous arbitration in which he participated, he was deprived of a fair hearing. The arbitration hearing of which plaintiff complains involved a controversy between plaintiff and Merrill, Lynch regarding the purchase and sale of securities. For this reason, the underlying controversy was one concerning transactions "involving commerce", and resolution of the disagreement is governed by federal law. *Macchiavelli v. Shearson, Hammill & Co., Inc.*, 384 F.Supp. 21 (E.D. Cal.1974).

The Federal Arbitration Act provides that arbitration agreements concerning transactions relating to commerce are enforceable by the federal courts. 9 U.S.C. § 2. The court is authorized to issue a stay in any proceedings upon being satisfied that the issue involved is referrable to arbitration upon a written agreement. *See*, 9 U.S.C. § 3. Furthermore, the court may compel the parties to proceed to arbitration in accordance with the terms of their written agreement. 9 U.S.C. § 4.

Sections 10 and 11 of the Act set forth the carefully limited scope of judicial review available to the parties. Section 10 provides:

In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

Section 11 provides:

In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

■ Plaintiff's complaint in the present action closely parallels the grounds of judicial review set out in the above sections. He contends that he has been denied a fair hearing because of domination of the proceedings by the defendant. Also because he was denied the right to submit evidence, and because the arbitrators were biased.

In addition, he claims the arbitrators maintained a conflict of interest as a result of their involvement in the securities business. Plaintiff undoubtedly could have appealed the arbitrators' ruling by way of Section 10. However, he chose not to pursue that avenue. His present suit constitutes an impermissible collateral attack upon the arbitration award. *See,* 6 C.J.S. Arbitration §§ 149, 157.

If the arbitrators' decision is to be overturned, plaintiff must do so pursuant to the Federal Arbitration Act. In the present context, he cannot collaterally attack the proceeding by stating an alternative cause of action by naming the arbitrators as defendants. In this respect, *see, Coenen v. R. W. Pressprich & Co., supra,* where the court said, at pp. 1215–1216:

> We think it proper to add, however, that, except for what appear to be no more than perfunctory and formal allegations of an antitrust claim, this complaint asserts what looks like the common, garden variety of alleged scheme to defraud in a security transaction. This is precisely the sort of breeder of ill-feeling between members of the Exchange it was intended to keep out of the courts. It will be a pity if it should ever be held that any member of the Stock Exchange can frustrate the arbitration clause of the Stock Exchange Constitution, the most significant of the measures taken to implement the self-regulation contemplated by the 1934 Act, by merely tossing into a complaint involving a dispute that arose after both parties to the dispute had become members of the Exchange, a few conclusory phrases to give the illusion of a triple-damage antitrust claim.

■ Whatever the nature of the damages requested, plaintiff's right to relief in any form necessarily depends upon judicial review of an arbitration proceeding authorized by the Federal Arbitration Act. Having failed to pursue the carefully tailored remedies which the Act provides, plaintiff has lost the right to such review. For this reason, I find the present action to be illegitimate.

## II. Arbitral Immunity and Collateral Estoppel.

The plaintiff contends that he was unaware of his right to appeal and suggests that the defendant was under some duty to inform him of this right. Granting defendant's dismissal motion, he argues, would sanction the defendant's conspiratorial silence and deny the plaintiff the right to seek relief from defendant's allegedly improper acts.

Even if the plaintiff is correct in asserting that he deserves relief due to his ignorance, for two other reasons, plaintiff's complaint must be dismissed.

■ First, it is evident that for reasons of public policy, arbitrators are protected from civil suit from the doctrine of arbitral immunity. In this respect, *see, Cahn v. International Ladies' Garment Union,* 203 F.Supp. 191 (E.D.Pa.), *aff'd* 311 F.2d 113 (3d Cir. 1962). There, one of the named defendants had presided at an arbitration involving a dispute between a garment manufacturing company and a union. Following the arbitration, the plaintiff-stockholders of the manufacturing company brought suit seeking damages from the arbitrator, among others. The district court, in dismissing the allegations against the arbitrator, said at p. 194:

> It has been held that an arbitrator is not liable in a civil action for damages for an award alleged to have been made by him fraudulently and corruptly. See, e. g., *Jones v. Brown,* 54 Iowa 74, 6 N.W. 140 (1880). It was stated in *Hoosac Tunnel Dock & Elevator Co. v. O'Brien,* 137 Mass. 424 (1884), at page 426:
>
> > "An arbitrator is a quasi judicial officer, under our laws, exercising judicial functions. There is as much reason in his case for protecting and insuring his impartiality, independence, and freedom from undue influences, as in the case of a judge or juror. The same considerations of public policy apply, and we are of opinion that the same immunity extends to him."

The fact that this arbitrator was not court-appointed is not controlling. If one is appointed by agreement of parties to act as arbitrator and is empowered to resolve disputes between them, he is, in so acting, performing a "quasi-judicial" function and is clothed with an immunity, analogous to judicial immunity, against actions brought by either of the parties arising out of the performance of his duties. See *Craviolini v. Scholer & Fuller Associated Architects*, 89 Ariz. 24, 357 P.2d 611, 613 (Sup.Ct. of Arizona, 1960).

Therefore, if this action is one for damages based on the actions of the arbitrator while acting in his quasi-judicial capacity, the Motion should be granted. The fact that it is couched in other terms or allegations should not change this holding if, in fact, the action is one which the courts have determined should not be permitted to be brought against an arbitrator. (Footnote omitted)

■ Arbitrators are not the only parties immune from civil suit. The same privilege of immunity extends to boards, associations, commissions, and other quasi-judicial bodies which sponsor arbitrations and make arbitration facilities available. *See*, e. g., *Merchants Despatch Transportation Corp. v. Systems Federation Number One, etc.*, 444 F.Supp. 75 (N.D.Ill.1977); *Fong v. American Airlines, Inc.*, 431 F.Supp. 1340 (N.D. Cal.1977). This view was succinctly expressed by the court in *Corbin v. Washington Fire and Marine Insurance Co.*, 278 F.Supp. 393 (D.S.C.), *aff'd*, 398 F.2d 543 (4th Cir. 1968), a libel case brought by an attorney against a group of insurers for allegedly slanderous statements made in submissions to an arbitration board. In holding defendants' statements privileged because they were made pursuant to arbitration proceedings, the court noted at p. 398:

The plaintiff seemingly recognizes that an absolute immunity attaches to the acts of the arbitrators but urges that this represents the limits of absolute privilege in arbitration proceedings. If, however, arbitration is to be safely utilized as an effective means of resolving controversy,

the absolute immunity attaching to its proceedings must extend beyond the arbitrators themselves; it must extend to all "indispensable" proceedings, such as the receipt of evidence and argument thereon. To urge that the immunity should be limited to the arbitrators would be similar to arguing that judicial immunity should go no farther than the judge. (Footnote omitted.) Accord, *Hill v. Aro Corp.*, 275 F.Supp. 482 (N.D.Ohio 1967).

■ The principle underlying the doctrine of arbitral immunity is the same as that giving rise to the doctrine of judicial immunity: the protection of the integrity of the decision-making process from reprisals by dissatisfied litigants. *See, Tamari v. Conrad*, 552 F.2d 778 (7th Cir. 1977). Plaintiff's suit represents an attack on the arbitral system which is impermissible under federal law and contrary to public policy. I therefore hold that the New York Stock Exchange, in its quasi-judicial capacity, is immune from civil liability for acts of its agents arising out of arbitration proceedings.

Moreover, even if the defendant was not immune from civil suit in the present case, plaintiff's complaint can not be sustained due to the doctrine of collateral estoppel. Plaintiff's complaint in this action repeats practically verbatim the allegations in his prior state court suit. The issue presented in this action, that is, the right to overturn the 1976–77 arbitration, is identical to that which was presented in the Merrill, Lynch action. It is clear, therefore, that in the present case plaintiff is attempting to relitigate issues which have previously been decided against him.

■ In modern times, collateral estoppel may be applied defensively, even though the defendant did not participate in the prior judgment. In this respect, *see, Chasteen v. Trans World Airlines, Inc.*, 397 F.Supp. 269 (W.D.Mo.1974), *aff'd*, 520 F.2d 714 (8th Cir. 1975), where the court said at p. 273:

"This rule allowing collateral estoppel as a defense received the approval of the United Supreme Court in the case of

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). It permits the plea of res judicata to be raised as a defense by one not a party to the prior suit against one who was such a party. It is applicable if the issue decided in the prior case was identical to the one presented in which the defense is raised, if there was a final judgment on the merits and if the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication."

Moreover, as the court noted in *Poster Exchange, Inc. v. National Screen Serv. Corp.*, 517 F.2d 117 (5th Cir. 1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976), previously named but non-party co-conspirators can defensively invoke collateral estoppel to prevent relitigation of identical issues in subsequent litigation. There, a motion picture accessories jobber instituted an anti-trust action against motion picture producers and an accessories company, seeking to recover treble damages because of defendants' alleged unlawful anti-trust conspiracy. The Court of Appeals upheld the trial court's ruling that a co-conspirator who was not a party to a previous action in which identical issues were litigated could, nevertheless, rely upon the doctrine of collateral estoppel in seeking dismissal. The court declared at p. 123:

> Where mutuality is lacking, a plaintiff may not be collaterally estopped if he did not enjoy "a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time," *Blonder-Tongue, supra*, 402 U.S. at 333, 91 S.Ct. at 1445, 28 L.Ed.2d at 802, quoting *Eisel v. Columbia Packing Co.*, D.Mass.1960, 181 F.Supp. 298, 301. But here, where plaintiff Poster had the initiative in a recognizably substantial litigation, and specifically chose to cite Columbia as one of the alleged conspirators, there is no suggestion of any failure of fairness in the original litigation, so as to render it unsupportive of an estoppel.

    *     *     *     *     *     *

Admitting "that in the modernized version of the law of collateral estoppel the ancient requirements of mutuality is no longer necessary," Poster's argument on this aspect of its appeal is only a recitation of its position that collateral estoppel must be based upon the result of a trial to the jury. A plaintiff's failure to muster sufficient proof to survive a summary judgment motion in the trial court or to sustain a jury verdict, however, is no demonstration that it was denied a fair opportunity to present its claim. *See Cheramie v. Tucker, supra* [5 Cir. 1974, 493 F.2d 586].

The New York Stock Exchange was not named as a defendant in plaintiff's prior state court proceeding. Instead, plaintiff named the NYSE as a co-conspirator, and sought judgment only against Merrill, Lynch. The Merrill, Lynch action was adjudicated on the merits adversely to the plaintiff. Because the same issues are present in this action, and because the defendant has met the conditions for application of collateral estoppel, I hold that Corey is barred from proceeding further with this action. Consequently, for this reason, and for those set out above, I grant defendant's motion for summary judgment and dismiss the plaintiff's complaint.