**George COREY, Trust Fund,**
**Plaintiff-Appellant,**

v.

**NEW YORK STOCK EXCHANGE,**
**Defendant-Appellee.**

**No. 80–1408.**

United States Court of Appeals,
Sixth Circuit.

Submitted on Briefs Aug. 31, 1982.

Decided Nov. 2, 1982.

George Corey, pro se.

Richard E. Rassel, Jere D. Johnson, Butzel, Long, Gust, Klein and Van Zile, Detroit, Mich., for defendant-appellee.

Before KENNEDY and KRUPANSKY, Circuit Judges, and RUBIN,* Chief District Judge.

* Honorable Carl Rubin, Chief Judge, United States District Court for the Southern District of Ohio, sitting by designation.

KENNEDY, Circuit Judge.

Corey appeals from the District Court's dismissal of his lawsuit against the New York Stock Exchange (NYSE) in which he claimed that the procedures followed in an arbitration proceeding sponsored by the NYSE and to which he was a party were wrongful and caused him injury. Corey sought to hold the NYSE liable for the conduct of the arbitrators and the NYSE's arbitration director, Cavell. We agree with the District Court that Corey's claims against the NYSE for the acts of the arbitrators are barred by arbitral immunity and those based on Cavell's acts constitute no more than an impermissible collateral attack on the arbitrators' award.[1]

In 1965, Corey began to invest in the stock market under the guidance of a long-time friend, Wright, who was an account executive with Merrill Lynch, Pierce, Fenner & Smith (Merrill Lynch). Wright suffered a paralyzing stroke in 1968, but returned to work thereafter and reestablished his business relationship with Corey. In 1972 and 1973, Corey invested heavily in the stock market, allegedly because of Wright's advice. Medical concerns prompted Wright's retirement in 1973 and Corey's account was transferred to another Merrill Lynch employee. The stock in Corey's portfolio depreciated in value and he was forced to liquidate it to meet the margin requirements of his account. Corey claims to have lost approximately $175,000 as a result of the liquidation.

Corey elected to initiate arbitration proceedings against Merrill Lynch in April 1976. Article VIII of the Constitution of the NYSE, gives non-members the option of submitting a claim against a member brokerage corporation for arbitration,[2] instead of pursuing remedies at law.[3] In his state-

---

1. The District Court also based its decision to dismiss on the ground that Corey was collaterally estopped from relitigating the claims in an earlier suit against Merrill Lynch. We need not reach this issue because we base our decision on the first two grounds.

2. Article VIII of the Constitution of the New York Stock Exchange provides as follows:
 "Sec. 1. Any controversy between parties who are members, allied members, member firms or member corporations shall, at the instance of any such party, and any controversy between a non-member and a member or allied member or member firm or member corporation arising out. of the business of such member, allied member, member firm or member corporation, or the dissolution of a member firm or member corporation shall, at the instance of such non-member, be submitted for arbitration, in accordance with the provisions of the Constitution and the Rules of the Board of Directors."
 
 \* \* \* \* \* \*
 
 Sec. 6. *Non-Member Controversies.* . Any controversy between a non-member and a member or allied member or member firm or member corporation, arising out of the business of such member, allied member, member firm or member corporation or the dissolution of a member firm or a member corporation shall, at the instance of such non-member, be submitted for arbitration as provided herein below. If the proceedings are to be held in the City of New York, the controversy shall be heard and determined as follows:

 \* \* \* \* \* \*
 
 If the proceedings are to be held outside the City of New York, such Arbitrators shall be selected, from panels appointed for service outside the City of New York, by lot, by the Arbitration Director, as follows:
 (a) If the amount in controversy (exclusive of interest and costs) is less than $10,000: one Arbitrator from the first of such panels and two from the second such panels provided by Section 4 of this Article; or
 (b) If the amount in controversy (exclusive of interest and costs) is more than $10,000: two arbitrators from the first of such panels and three Arbitrators from the second of such panels provided for by Section 4 of this Article:
 The decision of a majority of the Arbitrators shall be final.

3. *See* Article VII of the Constitution of the New York Stock Exchange.
 Sec. 7. *Provisions Applicable to All Controversies.* All arbitration proceedings shall be conducted in such manner and pursuant to such rules as the Board of Directors shall from time to time adopt.
 The Board of Directors may decline in any case to permit the use of the arbitration facilities of the Exchange pursuant to this Article and may delegate such power in accordance with the provisions of Section 1 of Article III.
 The Arbitrators in any case may at any time during the proceedings, and shall upon the joint request of the parties thereto, dismiss the proceedings and refer the parties to their remedies at law. In any arbitration

ment of claim Corey alleged that his loss resulted directly from Wright's impaired judgment as a result of his stroke and from the negligence of Merrill Lynch in permitting Wright to return to work before he was capable of intelligently advising customers. The rules of the NYSE, which sponsored the arbitration, governed the selection of the five arbitrators responsible for Corey's case as well as the procedural rules to be followed. Cavell, the Assistant Arbitration Director for the NYSE, administered arbitrations between members and non-members of the NYSE. He was responsible for overseeing the preliminary arrangements for arbitrations, including the obtaining of written submissions, arranging for the appointment of arbitration panels, scheduling hearing dates, acting as a moderator on behalf of the arbitration panel and furnishing the parties with written notification of arbitration decisions. Upon selection of the arbitration panel, two hearings were held in Detroit at which Corey appeared without counsel. In March 1977, the arbitrators dismissed Corey's claim against Merrill Lynch and assessed $700 in costs against him. Cavell mailed a copy of this decision to Corey in early April 1977. Corey was not informed of his right to appeal and did not avail himself of the appeal provisions of the federal Arbitration Act. 9 U.S.C. §§ 1 et seq.

In early 1978, Corey filed suit in Ingham County Circuit Court against Merrill Lynch claiming Merrill Lynch and the NYSE conspired to deprive him of a fair hearing before the arbitrators. Neither the NYSE, Cavell nor the individual arbitrators were named as defendants. Corey challenged the composition of the arbitration panel as violative of the NYSE rules and asserted procedural irregularities that prevented him from submitting evidence, caused hearings to be postponed over his objection and al-

lowed the arbitrators to dominate the proceedings with the purpose of defeating his claims. A motion for accelerated judgment was granted in favor of Merrill Lynch on the ground that the arbitrators' award was final and binding and that the court lacked jurisdiction over the parties and the subject matter of the suit. Corey did not appeal this decision.

In August 1978, Corey filed suit against the NYSE in Ingham County Circuit Court making allegations virtually identical to those in his suit against Merrill Lynch. He did not name Cavell or the individual arbitrators as defendants, although complaining of their acts, presumedly pursuing the NYSE on some theory of vicarious liability. Specifically, Corey alleged that the acts of Cavell during the arbitration hearings sponsored by the NYSE deprived him of a fair hearing because Cavell selected members of the arbitration panel in violation of the NYSE rules and adjourned and rescheduled hearings over Corey's objection. Although the wrongdoing is alleged to be that of Cavell, other allegations address matters unique to the arbitrators, such as their alleged refusal to allow Corey to present evidence and their prejudgment as to the merit of Corey's claims. Corey sought $1,000,-000 in punitive damages for mental anguish and long-standing physical problems brought about as a result of these acts.

Following the removal of this action to federal district court, the NYSE successfully moved for summary judgment. *Corey v. New York Stock Exchange*, 493 F.Supp. 51 (W.D.Mich.1980). Corey appeals this determination.

## I. ARBITRAL IMMUNITY

■ To the extent that Corey's complaint may be construed to allege wrongdoing by the arbitrators for which the NYSE is lia-

---

proceeding, whether involving a member controversy or a non-member controversy, the Arbitrators may determine, subject to the rules of the Board of Directors, the amount chargeable to the parties as costs, to cover the expense of the hearing, and, upon the determination of such controversy, shall determine by whom such costs shall be borne

or may in their discretion remit all or part thereof. Where the expense of the hearing exceeds the amount chargeable to the parties as costs, such excess shall be borne by the Exchange.

There shall be no appeal to the Board of Directors from a decision of the Arbitrators in any arbitration proceedings.

ble, we agree with the District Court that the NYSE, acting through its arbitrators, is immune from civil liability for the acts of the arbitrators arising out of contractually agreed upon arbitration proceedings. Our decision to extend immunity to arbitrators and the boards which sponsor arbitration finds support in the case law, the policies behind the doctrines of judicial and quasi-judicial immunity and policies unique to contractually agreed upon arbitration proceedings.

 The Supreme Court has long recognized that there are certain persons whose special functions require a full exemption from liability for acts committed within the scope of their duties.[4] The rationale behind the Supreme Court decisions is that the independence necessary for principled and fearless decision-making can best be preserved by protecting these persons from bias or intimidation caused by the fear of a lawsuit arising out of the exercise of official functions within their jurisdiction. *Butz v. Economou,* 438 U.S. 478, 508–11, 98 S.Ct. 2894, 2911–13, 57 L.Ed.2d 895 (1978); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Bradley v. Fisher,* 80 U.S. 335, 20 L.Ed. 646 (1872). In *Butz* the Court stated that immunity is not extended to individuals because of their particular location in government but because of the special nature of their responsibilities. *Butz, supra,* 438 U.S. at 511, 98 S.Ct. at 2913. The Court said that the relevant consideration in evaluating whether immunity should attach to the acts of persons in certain roles and with certain responsibilities was the "functional comparability" of their judgments to those of a judge. *Id.* 512, 98 S.Ct. at 2913; *Imbler, supra,* 424 U.S. at 423 n. 20, 96 S.Ct. at 991

n. 20. In each instance, safeguards were present to protect other participants and the integrity of the decision-making process. Paramount among these safeguards is the right of judicial review. *Butz, supra,* 438 U.S. at 512–14, 98 S.Ct. at 2913–14; *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967).

We believe that determinations made by the panel of arbitrators in the case on appeal are functionally comparable to those of a judge or an agency hearing examiner even though this was not a statutory arbitration or one where the arbitrators were court appointed. In *Burchell v. Marsh,* 58 U.S. 344, 15 L.Ed. 96 (1855), the Supreme Court stated that "[a]rbitrators are judges chosen by the parties to decide the matters submitted to them . . . ." *Id.* 58 U.S. at 349. The submission of the parties replaces a statute or court order as the source of the arbitrators' power with regard to subject matter and procedural rules. The arbitrators in this case were appointed by private agreement of the parties and empowered by the parties to resolve disputes between them. By agreement, the parties invoked the arbitrators' independent judgment and discretion. *Cahn v. International Ladies' Garment Union,* 311 F.2d 113 (3d Cir. 1962); *Corbin v. Washington Fire and Marine Insurance Co.,* 278 F.Supp. 393, 398–99 (D.S. C.), *aff'd,* 398 F.2d 543 (4th Cir. 1968). By private agreement the parties have substituted the arbitrators for a judge as the decision-maker in their case. Jurisdiction by consent is recognized by reviewing and enforcing courts. *See* 9 U.S.C. §§ 2, 9, 10, 11.

Other circuits have applied in substance a functional comparability test and accorded arbitrators immunity for acts arising out of

---

4. The principle behind the doctrine of judicial immunity first adopted by the Supreme Court in *Bradley v. Fisher,* 80 U.S. 335, 20 L.Ed. 646 (1872), has been extended to state judges, *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (judicial immunity), to federal prosecutors, *Yaselli v. Goff,* 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927), *aff'g,* 12 F.2d 396 (2d Cir. 1926) (quasi-judicial immunity), and state prosecutors, *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)

(quasi-judicial immunity). The principle in *Bradley* has also been extended to federal agency examiners, administrative law judges and agency officials performing functions analogous to prosecutors, *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (quasi-judicial immunity). To ensure unintimidated independence of action, legislators also enjoy complete immunity, *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).

the scope of their arbitral functions and within their jurisdiction in contractually agreed upon arbitration proceedings. *Tamari v. Conrad,* 552 F.2d 778, 780 (7th Cir. 1977) (Chicago Board of Trade arbitrators); *Cahn, supra,* (labor arbitrator). *See E.C. Ernst, Inc. v. Manhattan Construction Company of Texas,* 551 F.2d 1026, 1032–33 (5th Cir. 1977), *cert. denied,* 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978) (no architectural arbitral immunity as a matter of fact); *Lundgren v. Freeman,* 307 F.2d 104, 117–18 (9th Cir. 1962) (architects as arbitrators). The same result has been reached by a number of district courts. *Yates v. Yellow Freight System,* 501 F.Supp. 101, 105 (S.D. Ohio 1980) (labor arbitrator); *I. & F. Corp. v. International Association of Heat and Frost Insulators & Asbestos Workers, Local 8,* 493 F.Supp. 147, 150 (S.D. Ohio 1980) (labor arbitrators); *Raitport v. Provident National Bank,* 451 F.Supp. 522, 527 (E.D.Pa.1978) (Joint Board of Trade); *Merchants Despatch Transportation Corp. v. Systems Federation Number One Railway Employees' Department AFL–CIO Carmen,* 444 F.Supp. 75, 77 (N.D.Ill.1977) (National Railway Adjustment Board); *Corbin, supra,* 398–99 (insurance board of arbitration); *Hill v. Aro Corp.,* 263 F.Supp. 324, 325–26 (N.D. Ohio 1967) (labor arbitrator); *Larry v. Penn Truck Aids, Inc.,* 94 F.R.D. 708 (E.D.Pa.1982) (member joint committee); *Bullock v. Dolnick,* No. 80 C 4694 (N.D.Ill. Dec. 3, 1980) (National Railway Adjustment Board). *See also Fong v. American Airlines, Inc.,* 431 F.Supp. 1340, 1343–44 (N.D. Cal.1977) (statutory airline board of adjustment).

Several safeguards exist to protect the participants in the decision-making process and the integrity of the arbitration proceedings. First, arbitration proceedings resemble judicial proceedings in several respects. Arbitration is adversarial. Both parties had a right to be represented by an attorney—a right Corey did not exercise. Discovery was available and hearings were held at which the arbitrators received evidence and entertained arguments. Both parties had the opportunity to present witnesses and other evidence and to cross-examine or impeach those of their adversary. After a period of deliberation, the arbitrators issued a written opinion deciding the claim.[5] The second safeguard is the automatic right of judicial review provided by the federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.,* applicable because of the commerce clause nexus present in transactions involving the purchase and sale of securities. *Macchiavelli v. Shearson, Hammill & Co., Inc.,* 384 F.Supp. 21 (E.D.Cal.1974); *Legg, Mason & Co., Inc. v. Mackall & Coe, Inc.,* 351 F.Supp. 1367 (D.D.C.1972). Judicial review by a district court in the jurisdiction where the award by an arbitrator is made is provided for in sections 9, 10 and 11 of the Arbitration Act. Although the scope of review differs slightly, the same protection is present in judicial review of arbitrators' decisions under the Arbitration Act as is present in the review of judicial or administrative decisions. The circumstances under which an award may be vacated include procurement of an award by fraud, corruption, undue means, partiality or corruption in the arbitrators, misconduct on the part of the arbitrators in refusing to hear pertinent evidence, arbitrators acting in excess of their powers, arbitrators committing errors of law, etc. 9 U.S.C. §§ 9, 10, 11. The district court has the power to modify or correct an award or direct a rehearing by the arbitrators. *Id.* §§ 9, 10. The final safeguard is the voluntary use of arbitration as a means of dispute resolution. A person such as Corey could elect to submit his claim to arbitration or pursue his remedy at law. Presumedly, individuals will not avail themselves of arbitration by contractual agreement if they lack confidence in the impartiality and reliability of the arbitration process. In light of these safeguards, the risk of a wrongful act by the arbitrators is outweighed by the need for preserving the independence of their deci-

---

**5.** The magnitude of the safeguards need not be so great here as in *Butz* because in *Butz* the competing interest was the allowance of law-suits to correct constitutional error. *See Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978).

sion-making. *See Butz, supra,* 514, 98 S.Ct. at 2914.

A number of policy arguments support our decision. From *Butz* it is clear that immunity does not depend upon the source of the decision-making power but rather upon the nature of that power. Accordingly, the limits of immunity should be fixed in part by federal policy. The functional comparability of the arbitrators' decision-making process and judgments to those of judges and agency hearing examiners generates the same need for independent judgment, free from the threat of lawsuits. Immunity furthers this need. As with judicial and quasi-judicial immunity, arbitral immunity is essential to protect the decision-maker from undue influence and protect the decision-making process from reprisals by dissatisfied litigants. Federal policy, as manifested in the Arbitration Act and case law, favors final adjudication of differences by a means selected by the parties. *See* 9 U.S.C. §§ 2, 3, 4; *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1402 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Rhine v. Union Carbide Corp.,* 343 F.2d 12, 16 (6th Cir. 1965) (labor arbitration). *Accord, Corey, supra,* 56; *I. & F., supra,* 150. Because federal policy encourages arbitration and arbitrators are essential actors in furtherance of that policy, it is appropriate that immunity be extended to arbitrators for acts within the scope of their duties and within their jurisdiction. *Corbin, supra,* 396–97; *Hill, supra,* 326. The extension of immunity to arbitrators where arbitration is pursuant to a private agreement between the parties is especially compelling because arbitration is the means selected by the parties themselves for disposing of controversies between them. By immunizing arbitrators and their decisions from collateral attacks, arbitration as the contractual choice of the parties is respected yet the arbitrators are protected. Arbitrators have no interest in the outcome of the dispute and should not be compelled to become parties to that dispute. *Tamari, supra,* 781. "[I]ndividuals cannot be expected to volunteer to arbitrate disputes if they can be caught up in the struggle between the litigants and saddled with the burdens of defending a lawsuit." *Tamari, supra,* 781. *Accord, Raitport, supra,* 527. An aggrieved party alleging a due process violation in the conduct of the proceedings, fraud, misconduct, a violation of public policy, lack of jurisdiction, etc., by arbitrators should pursue remedies against the "real" adversary through the appeal process. To allow a collateral attack against arbitrators and their judgments would also emasculate the appeal provisions of the federal Arbitration Act. 9 U.S.C. §§ 9, 10. For these reasons we believe that arbitral immunity is essential to the maintenance of arbitration by contractual agreement as a viable alternative to the judicial process for the settlement of controversies and must be applied in this case.

Extension of arbitral immunity to encompass boards which sponsor arbitration is a natural and necessary product of the policies underlying arbitral immunity; otherwise the immunity extended to arbitrators is illusionary. It would be of little value to the whole arbitral procedure to merely shift the liability to the sponsoring association.

## II. ARBITRATION ACT AS EXCLUSIVE REMEDY

Corey's complaint may also be construed as alleging wrongdoing by Cavell for which the NYSE is liable, such as improper selection of the panel of five arbitrators so that they were biased against Corey and adjournments of Corey's hearing dates which caused him prejudice. It is implicit in Corey's complaint that these acts compromised the arbitration award thereby causing him mental anguish and physical problems. We agree with the District Court that the federal Arbitration Act provides the exclusive remedy for challenging acts that taint an arbitration award and that Corey's attempt to sue the NYSE for the acts of Cavell is no more, in substance,

than an impermissible collateral attack on the award itself.[6]

■ Sections 10, 11 and 12 of the Arbitration Act provide a mechanism whereby parties to an arbitration proceeding may obtain judicial review in the federal district court in the district in which the arbitration award is made. The scope of review is limited by these provisions. Section 10 provides that an award may be vacated if it was procured by fraud, corruption or undue means, where there has been evident partiality or corruption in the arbitrators, where there has been misconduct or misbehavior by which the rights of any party may have been prejudiced and where the arbitrators exceeded their powers. A rehearing by the arbitrators may be ordered in certain circumstances. Section 11 allows a district court to modify or correct an order for any miscalculation of figures or mistake in description, where the arbitrators have awarded upon a matter not submitted to them and where the award is imperfect in a matter of form not affecting the merits of the controversy. An order so compromised may be modified or corrected to effect the intent of the award and promote justice between the parties. Section 12 of the Arbitration Act requires that notice of a motion to vacate, modify or correct an award must be served on the adverse party or his attorney within three months after the award is filed or delivered. Failure to comply with this statutory precondition of timely service of notice forfeits the right to judicial review of the award. *Piccolo v. Dain, Kalman & Quail, Inc.,* 641 F.2d 598, 600 (8th Cir. 1981). *See International Union United Automobile, Aerospace & Agricultural Implement Workers of America (UAW) v. LaCrosse Cooler Co.,* 406 F.Supp. 1213, 1215 (W.D.Wis.1976); *DeLorto v. United Parcel Service, Inc.,* 401 F.Supp. 408, 409 (D.Mass.1975); *Hill, supra,* 486–87.

Allegations of wrongdoing raised by Corey in his complaint are squarely within the scope of section 10 of the Arbitration Act. Evident partiality on the part of the arbitrators toward Merrill Lynch as a result of the manner in which they were selected is covered by section 10(b). Adjournments allegedly causing prejudice are reviewable under section 10(c). The issues raised by Corey's complaint could have been resolved by timely pursuit of a remedy under this section.

■ The federal Arbitration Act provides the exclusive remedy for challenging an award on the grounds raised by Corey. Section 2 of the Arbitration Act states that a contractual provision wherein the parties agree to submit a dispute to arbitration is valid, irrevocable and enforceable, except on such grounds in law or equity as exist for the revocation of the contract to arbitrate. Once an arbitrator has rendered a decision the award is binding on the parties unless they challenge the underlying contract to arbitrate pursuant to section 2 or avail themselves of the review provisions of sections 10 and 11. Corey has not alleged that there was any defect in the underlying agreement to arbitrate the dispute with Merrill Lynch, which he himself initiated, which would provide a basis for revoking that agreement. Nor has he availed himself of the review provisions of sections 10 and 11. Barring these two situations, the Arbitration Act provides no other avenue by which an arbitration award may be challenged. Two circuit courts have held that allegations within the purview of section 10 are reviewable only under the authority of the federal Arbitration Act. *Piccolo, supra,* 600 (alleged no fair and impartial hearing); *Tamari v. Bache & Co.,* 565 F.2d 1194, 1202 (7th Cir. 1977), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978) (arbitrators biased).

To confine challenges to an award within the scope of section 10 and 11 exclusively to the review provisions of the Arbitration Act is also consistent with section 12 of that

---

**6.** This same argument may be made with respect to the allegations against arbitrators which we have found to be protected by arbitral immunity.

Act. The three month notice requirement in section 12 for an appeal of the award on section 10 or 11 grounds is meaningless if a party to the arbitration proceedings may bring an independent direct action asserting such claims outside of the statutory time period provided for in section 12.

Corey's claims constitute a collateral attack against the award even though Corey is presently suing a different defendant than his original adversary in the arbitration proceeding and is requesting damages for the acts of wrongdoing rather than the vacation, modification or correction of the arbitration award. Corey was not harmed by the selection of the arbitrators and the adjournments of the hearings in and of themselves; he did not and cannot raise a constitutional due process claim. Rather, he was harmed by the impact these acts had on the award. Corey's complaint has no purpose other than to challenge the very wrongs affecting the award for which review is provided under section 10 of the Arbitration Act. The mere presence of the NYSE, Cavell or the arbitrators or the prayer for damages does not change the substance of his claim. Very simply, Corey did not avail himself of the review provisions of section 10 of the Arbitration Act and may not transform what would ordinarily constitute an impermissible collateral attack into a proper independent direct action by changing defendants and altering the relief sought.

Accordingly, the judgment of the District Court is affirmed.