**MID–STATE FOOD DEALERS ASSOCI-
ATION, A Michigan non-profit
corporation, Plaintiff,**

v.

**The CITY OF DURAND, MICHIGAN, a
municipal corporation, Defendant.**

No. 80–40385.

United States District Court,
E. D. Michigan, S. D.

Oct. 20, 1981.

Anthony Mansour, Flint, Mich., for plaintiff.

Samuel S. Reiter, Owosso, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

### I  FACTS

This action arises out of an ordinance enacted by the city of Durand (hereafter defendant) on November 3, 1980. The ordinance provides that all businesses subject to city licensing requirements must be closed between the hours of 2:00 a. m. and 6:00 a. m. The ordinance does, however, contain a limited exception allowing a business to remain open during the prohibited hours if it can demonstrate that this would be in the public interest.[1]

Mid-State Food Dealers Association (hereinafter plaintiff) is a non-profit organization. Sunshine Foods, a member of plaintiff association had purchased land in the city of Durand prior to the enactment of the ordinance. The land was to be used for the construction of a new convenience store. Plaintiff has indicated that Sunshine Foods expected to service early morning trade.

After it opened for business, Sunshine Foods began to receive complaints from its neighbors regarding offensive noise caused by early morning customers. In response to these complaints, Sunshine Foods offered to purchase additional police protection in the area. This offer was rejected, and subsequently the city enacted the ordinance here challenged.

In its Complaint which was filed on November 19, 1980, plaintiff asserts that the ordinance was originally designed to set a 12:00 midnight closing time. Plaintiff alleges that the 2:00 deadline was ultimately selected in order to accommodate "liquor bars and other businesses." [2]

Defendant contends that the 2:00 a. m. closing time was "thoughtfully selected" so as not to conflict with areas preempted by state law.[3] In any event, defendant argues that the motivating force behind the statute was the city's desire to abate the noise, litter and other problems caused by twenty-four hour convenience stores.

Plaintiff contends that the ordinance violates the equal protection, due process and contract clauses of the United States Constitution. Plaintiff also contends that the ordinance violates the following provisions of the Michigan Constitution: Article I, Section II (equal protection clause); Article I, Section 10 (contract clause); Article III, Section 2 (separation of powers); Article VI, Section 28 (substantial evidence). Defendant denies that these provisions are violated. Furthermore, defendant advances the position that this case is not ripe for a judicial determination.

On November 20, 1980, the parties stipulated to the entry of a preliminary injunction suspending enforcement of the ordinance. On December 20, 1980, defendant filed a Motion for Summary Judgment based on perceived weaknesses in plaintiff's theories. This Court will now consider the Summary Judgment Motion.

---

1. The ordinance, section 7.24 of the city's business and trades title, provides as follows: "Any business required to be licensed under the provisions of this ordinance shall be required to close between the hours of 2:00 a. m. and 6:00 a. m. unless after application and hearing before the City Council it is determined to be in the interest of the public health and welfare to allow such business to operate during such hours."

2. See, brief of plaintiff in opposition to the Motion for Summary Judgment at p 5.

3. See, answer of defendant at p 2.

## II EQUAL PROTECTION CLAUSE ANALYSIS

The threshold issue in analyzing the claim under the equal protection clause of the United States Constitution[4] is determining the proper standard of review. At the present time, there are three standards: The strict scrutiny standard is applied where state action is based on a suspect classification or fundamental right.[5] The middle tier standard—often referred to as "rational basis with a bite"—is applied where any one of an enumerated set of personal rights is impinged upon by the state action in question.[6] And finally, the remaining possible forms of state action, most notably economic laws and regulations, are reviewed under the rational basis test.[7]

The ordinance in this case, as a non-suspect and non-middle tier classification, is subject to review under the rational basis test. This much is conceded by both parties. The point of dispute, however, centers around the level of rigorousness that the judiciary must employ in its rational basis analysis.

Both parties again agree that the verbal formulation of the rational basis test is that the state action in question must rationally relate to the legitimate purposes of the state action. Plaintiff, however, contends that this standard was violated by the instant ordinance. The violation, according to Plaintiff, occurred in two respects: First, the ordinance favors non-licensed businesses over licensed businesses in that only licensed businesses must remain closed; second, the ordinance was deliberately designed to allow bar owners to remain open until two o'clock. Defendant responds by asserting that these factors do not amount to an equal protection clause violation.

The modern rational basis test is an exceedingly deferential standard of review. Professor Gunther was not exaggerating when, in his seminal article on the equal protection clause, he remarked that the rational basis test extends "minimal scrutiny in theory, and none in fact."[8] This was best demonstrated by the Supreme Court in the case of *New Orleans v. Dukes.*[9]

In *Dukes,* the Court upheld a New Orleans ordinance that allowed vendors who had operated within the New Orleans French Quarter for the preceding eight years to escape a general prohibition against pushcart vending in the French Quarter. *Dukes* squarely overruled *Morey v. Doud,* a decision that had struck down an economic-oriented state provision.[10]

Plaintiff blandly asserts that there is no real difference between the rational basis test as applied in *Doud* and as applied in *Dukes.* This Court could not disagree more. *Dukes* was a powerful repudiation of the *Doud* application of the rational basis. As the Court pointed out in *Dukes:* "*[Doud]* was a needlessly intrusive judicial infringement on the State's legislative powers, and we have concluded that the equal protection analysis employed in that opinion should no longer be followed."[11]

Thus, *Dukes* should be read to stand for the proposition that any rational relationship between a statute's purpose and means is sufficient to pass equal protection clause muster. It must be noted that *Dukes* addressed the issue of piecemeal legislative

---

4. The equal protection clause provides in pertinent part: "No state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S.Const.Amend. XIV, § 1.

5. *See, e. g., Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967).

6. *See, e. g., Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).

7. *See, e. g., McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). *See also,* Weidner, The Equal Protection Clause;

The continuing Search for Judicial Standards, 57 U Det. J Urg. L 867 (1980).

8. Gunther, The Supreme Court 1971 Term Foreward: In Search of Evolving Doctrine on a Changing Court: A need for a Newer Equal Protection: 86 Harv.L.Rev. 1, 8 (1972).

9. 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

10. *See id.,* at 306, 96 S.Ct. at 2518.

11. *Id.*

classification. The *Dukes* Court explicitly stated that it is not impermissible for a legislature to attack a social or economic evil by eliminating some undesirable practices while leaving others intact.[12] Indeed, *Dukes* is the classic statement that legislators are not required to treat similarly situated persons in an equal manner.

■ It is thus obvious that plaintiff, as a matter of law, has no equal protection clause claim. Under *Dukes*, it is not a violation for the defendant to close licensed businesses during the early morning hours, and at the same time to allow unlicensed businesses to remain in operation. Defendant is merely eliminating the early morning noise and litter in a gradual manner—and this is clearly permissible.

Furthermore, an equal protection clause violation is not established because the deadline was extended to two o'clock a. m. in order to accommodate liquor establishments.[13] This was a rational legislative choice based on economics and revenue consideration; it is thus not a violation of the equal protection clause.

The practical result in equal protection analysis is that almost any economic-oriented statute will be held constitutional.[14] Truly, the modern day equal protection clause has been forged into a formidable judicial weapon, but not where economic legislation is involved. This is demonstrated by the fact that in the last half century only one economic oriented statute—the provision in the now overruled case of *Mor-*

*ey v. Doud*—[15] has been held violative of the equal protection *clause*.[16] This is a powerful trend—a trend that this Court is bound to follow. The aspect of the Summary Judgment Motion that pertains to the equal protection clause is, therefore, GRANTED.

## III  DUE PROCESS ANALYSIS

■ Plaintiff's due process argument must be rejected in the same manner as its equal protection clause argument. It certainly is true that at one point in the history of our country the due process clause would have been a powerful weapon in the arsenal of the instant plaintiff. But that was in the era of substantive economic due process—an era that is long gone. Ever since the Supreme Court's 1955 decision in *Williamson v. Lee Optical*,[17] the lenient rational basis test has been the touchstone of due process clause review. Since the *Williamson* decision, not a single economic law or regulation has been overturned on substantive due process grounds.[18] This Court is quite confident that the ordinance in the instant case is well within the allowable range of the due process clause. The aspect of the Summary Judgment Motion that pertains to the due process clause under the United States Constitution is, therefore, GRANTED.

## IV  THE CONTRACT CLAUSE ANALYSIS

■ Plaintiff has asserted a claim based on Article 1, Section 10 of the United States

---

12. *Id.*, at 305–06, 96 S.Ct. at 2517–18.

13. This Court accepts, for purposes of this Motion, that this was the chief motivating factor behind the 2:00 a. m. deadline rather than a 12:00 deadline. As such, we realize that we are treating this as a Rule 12(b)(6) Motion rather than as a Summary Judgment Motion. Summary Judgment is, of course, applicable where there is no genuine issue of fact and where the movant is entitled to prevail as a matter of law. A Rule 12(b)(6) Motion accepts the opponent's version of the facts, and then states that there is no basis upon which relief can be granted. There is a genuine issue of fact here, but this Motion can still be labelled as a Summary Judgment Motion. As Professor Wright has pointed out, the federal courts will ignore the technical differences between these two Motions. It is then not at all unusual for a Rule

12(b)(6) Motion to be labelled as a Summary Judgment Motion. *See*, Wright & Miller, Federal Practice and Procedure, § 2713.

14. *See, generally,* Weidner, *supra*, n 7.

15. 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957).

16. *See,* the discussion in *New Orleans v. Dukes*, at 427 U.S. 297, 306, 96 S.Ct. 2513, 2518, 49 L.Ed.2d 511.

17. 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

18. *See* Nowak, Rotunda & Young, Handbook of Constitutional Law, at 406–07.

Constitution. The relevant provision, the contract clause, provides in pertinent part: "No state shall ... pass any ... Law impairing the obligation of contracts." At first glance it is not readily apparent to what contract the plaintiff is referring. Upon perusal of plaintiff's brief, however, it becomes clear that the economic expectancy that was part of the consideration received by Sunshine Foods arguably is being impaired by the ordinance.

The point of departure in modern contract clause analysis is the case of *Home Building & Loan Ass'n v. Blaisdell.*[19] In *Blaisdell,* the Court rejected a contract clause challenge to a depression era statute that gave state courts the right to extend the redemption period after a foreclosure. *Blaisdell* had the same effect on the contract clause as *Williamson* had on the due process clause; an era of wide-ranging state latitude was ushered in.

There have been only a few cases where the Court has struck down statutes as violative of the contract clause.[20] One such recent case is *United States Trust Co. v. New Jersey.*[21] Where the Court struck down a New Jersey statute that had an adverse effect on the rights of New Jersey bondholders. The Court was careful, however, to emphasize that the state statute operated to relieve the state of obligations to private citizens. The Court emphasized that its decision did nothing to alter the considerable latitude enjoyed by state governments with respect to laws that have the effect of impairing the contracts of private citizens.[22]

In light of the state of the law, this Court must also reject plaintiff's contract clause claim. The *Blaisdell* reasonableness standard is clearly satisfied. As we have indicated earlier in this Opinion, the ordinance rationally related to a permissible govern-mental objective. That it had the incidental effect of impairing plaintiff's contract is simply not enough to violate the Constitution. This Court, therefore, GRANTS the aspect of defendant's Summary Judgment Motion that refers to the contract clause of the United States Constitution.

## V RIPENESS ISSUE

■ As was noted earlier, defendant has argued that the federal constitutional issues are not ripe for decision. This Court disagrees; these issues have been decided.

In finding that ripeness exists in the instant case, this Court notes that the ordinance was in full effect when the lawsuit was filed. The controversy was thus very real and concrete—and entirely out of the realm of the hypothetical. Under the dicta set out by the Supreme Court in *United Public Workers v. Mitchell,*[23] this is enough to satisfy the ripeness requirement.

It should also be noted that defendant errs in his argument that the quasi administrative scheme set out by the statute bears on the ripeness question at hand. The statute allows an exemption procedure if the given business can demonstrate that an exemption would be in the public interest. This procedure is entirely optional. Sunshine Foods chose not to pursue an exemption since its federal constitutional position is that it has a right to remain open without having to make the public interest demonstration. Hence, it was indeed imminently threatened with harm by the challenged ordinance. This Court, therefore, finds that this controversy was and is ripe for constitutional determination. It is to be noted, however, that the rejection of defendant's ripeness theory does not in any respect alter the fact that this Court has granted defendant's summary judgment on all of plaintiff's claim for federal constitutional relief.

19. 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934).

20. *See,* Nowak, Rotunda & Young, *supra,* n 18 at 426–27.

21. 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977).

22. *See* 431 U.S. 1, 26–32, 97 S.Ct. 1505, 1519–1522, 52 L.Ed.2d 92.

23. 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

## VI STATE CLAIM AND PENDENT JURISDICTION

The foregoing parts of this Opinion have indicated that plaintiff, as a matter of law, has no federal constitutional claim. Nevertheless, a host of state constitutional issues remain. These include the effect of the Michigan Constitution's equal protection clause; due process clause; contract clause; separation of power provision and substantial evidence rule. It remains for this Court to determine whether it will decide these issues.

This Court must look to the doctrine of pendent jurisdiction in order to justify deciding the state claim. Pendent jurisdiction allows a federal court to assume jurisdiction over state law issues where such issues arise from a "nucleus of operative facts" common to both the state and the federal claims.[24] As Professor Wright has noted, the nucleus of operative facts test has been loosely interpreted.[25] Thus, there can be no doubt that pendent jurisdiction exists in the instant case. The state claims, like the federal claims, arise out of the operation of the challenged ordinance. Therefore, this Court has the right to assume pendent jurisdiction.

That this Court has the power to try the state claims does not necessarily mean that it will do so. As was made ever so clear in the Supreme Court case of *United Mine Workers v. Gibbs*,[26] pendent jurisdiction is discretionary rather than mandatory. And it should be stressed that where *all* the federal claims have been dismissed in a pendent jurisdiction case, the majority of the federal courts refuse to hear the state claims.[27] This practice was approved by the Sixth Circuit in the case of *Nash v. Lums of Ohio*.[28]

In the instant case, several state constitutional issues remain. A number of these questions—especially the separation of powers issue—are complex and not subject to easy resolution. If we were to invoke pendent jurisdiction to decide these issues, it would—to quote Judge Friendly—be a case of "the tail wagging the dog."[29] Therefore, this Court hereby holds that it will not decide the remaining state law issues in this case. The state law claims are thus DISMISSED without prejudice as this Court declines to exert jurisdiction over those claims.

## VII SUMMARY AND ORDER

This Court has considered plaintiff's federal constitutional claim on the merits. It has analyzed the equal protection clause issue; the due process clause issue; the contract clause issue. And it has held that, as a matter of law, plaintiff has no basis for relief; therefore, with respect to the federal constitutional law claims, defendant's Motion for Summary Judgment is hereby GRANTED. Accordingly, the stipulated injunction issued by this Court on November 20, 1980 is hereby VACATED.

This Court has also considered the appropriateness of exercising pendent jurisdiction with respect to the remaining state law claims and has decided not to invoke that jurisdiction. Therefore, the state law claims are hereby DISMISSED without prejudice.

IT IS SO ORDERED.

---

24. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

25. *See*, Wright & Miller, *supra*, n 13 at § 3567.

26. *See*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218.

27. *See*, Wright & Miller, *supra*, n 13 at § 3567.

28. 484 F.2d 392 (1975).

29. *McFaddin Express v. Adley Corp.*, 346 F.2d 424, 427 (1965).