Jimmie L. RILEY, Plaintiff,

v.

Mark SMITH, et al., Defendants.

No. 81–40283.

United States District Court,
E.D. Michigan, S.D.

Aug. 26, 1983.

Jimmie L. Riley, in pro. per.

Brian MacKenzie, Asst. Atty. Gen., Lansing, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

### I FACTS

This is a 42 U.S.C. § 1983 action brought by Jimmie Lee Riley, an inmate at State Prison of Southern Michigan (SPSM). The defendants are Alex Harpowiski, an inspector for the Michigan Department of Corrections and Mark Smith, a corrections specialist for the Department.

Plaintiff alleges that his claim arose on November 26, 1974. On that date, plaintiff alleges that defendant Smith issued plaintiff a misconduct ticket for being in the twelve block of SPSM without authorization. Plaintiff alleges that defendant Smith knew that plaintiff had been issued a pass to visit twelve block and that plaintiff did not deserve the misconduct ticket.

Plaintiff alleges that shortly after his receipt of the misconduct citation he was interviewed by defendant Harpowiski who then determined that plaintiff was a threat to the order of the institution, and thus plaintiff was held in administrative segregation pending a ruling on the November 26, 1974 misconduct citation. Consequently, plaintiff allegedly spent four days in administrative segregation awaiting a hearing on the misconduct charge. Eventually, plaintiff was found not guilty of this charge.

In this claim, plaintiff has asserted procedural due process and equal protection clause theories against both defendants. Plaintiff contends that these theories are applicable to the facts of this case and entitle plaintiff to $2,000 in compensatory damages for his four days in administrative segregation. Plaintiff also seeks $5,000 in punitive damages.

Pending are four motions. The Court will treat two of these motions—filed on September 8, 1982 and November 28, 1982 as unitary motions for leave to amend and thereby add a harassment claim. This motion will be decided in part II–A of this opinion. In part II–B, the Court will decide defendants' motion for summary judgment. In part II–C plaintiff's motion for summary judgment will be dealt with.

### II LEGAL ANALYSIS

A. *Plaintiff's September 8, 1982 and January 22, 1982 Motion for Leave to Amend*

On September 8, 1982, plaintiff filed a letter with the Court informing the Court

that defendant Smith had issued plaintiff a misconduct ticket on August 23, 1982 charging plaintiff with "insolence." This misconduct report, attached to plaintiff's letter (at docket entry # 41), indicates that plaintiff was ticketed because he made a sarcastic comment to Mr. Smith regarding a different lawsuit. In the pertinent part of the misconduct form, Mr. Smith asserts that:

"There can be no practical purpose for making such a statement to me. Any business regarding this suit has been handled and will continue to be handled by the Attorney General's office. There is a large sum of money involved which is distressing enough without being 'rubbed in' by this resident." *See* attachment to docket entry # 41.

On November 21, 1982, plaintiff filed a motion with the Court labelled "Motion for Preliminary Injunction." Therein, plaintiff alleges that defendant Smith has indicated that other guards, induced by defendant Smith, have harassed plaintiff for filing this and other lawsuits. *See* docket entry # 52.

The Court will interpret the September 8, 1982 and November 22, 1982 motions as a single motion for leave to amend and thereby add an additional claim to this lawsuit. This claim seeks a permanent injunction against defendants from taking reprisal actions against plaintiff. Since plaintiff has apparently been acquitted of the misconduct violations stemming from the alleged harassment,[1] and since plaintiff apparently did not suffer administrative segregation as a result of the said violations, the permanent injunctive demand would appear to be the only specific demand for relief in connection with the harassment.

Under the liberal amendment orientation of the Sixth Circuit, the Court must grant the motion for leave to amend.[2] Accordingly, the harassment claim against defendant Smith is now part of this lawsuit. Although plaintiff mentioned other guards in his November 22, 1982 motion, it is the

Court's understanding that these guards were allegedly acting at the behest of Smith and that the other guards are not to be added as additional defendants. Thus, for purposes of organizing this lawsuit, defendant Smith remains as the only defendant.

The Court would point out that two theories are raised by this amendment. First, the Court believes that, if the allegations are true, plaintiff's first amendment right to petition for grievance redress is being violated. The Sixth Circuit recently recognized the existence of the right in the prison context in the case of *Wolfel v. Bates,* 707 F.2d 932 (CA 6, 1983). There, plaintiff Wolfel had obtained signatures from several fellow inmates protesting a prison practice. Wolfel then sent the petition to the prison superintendent. In response, prison guard Bates issued Wolfel a rules infraction charge asserting that Wolfel had made

"unfounded complaints or charges against staff, members of the institution with malicious intent."

The Sixth Circuit held that Wolfel's First Amendment right to petition for redress of grievances had been violated. The *Wolfel* court declared that prison administrators may not suppress the peaceful assertion of inmate grievances.

Arguably, a *Wolfel* theory is raised by the alleged harassment and reprisals. Furthermore, an equal protection access to the judiciary claim also is raised. *See Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969).

The Court also would point out that the newly-added claim is relevant to plaintiff's original demand for punitive damages. If plaintiff's allegations are true, his demand for punitive damages undoubtedly will be strengthened. Thus, there is a monetary aspect to the harassment claim.

In sum, the Court grants the September 8, 1982 and November 21, 1982 motions such

---

1. *See* pp. 1–3 of affidavit at docket entry # 52.

2. *See Howard v. Kerr Glass,* 699 F.2d 330 (CA 6, 1983); *Tefft v. Seward,* 689 F.2d 637 (CA 6, 1982).

that a harassment claim is hereby added to the lawsuit. Defendant Smith must respond to this claim within twenty (20) days from the date of this Order.

### B. Defendants' September 15, 1982 Motion for Summary Judgment

#### a. Butz v. Economou

Defendants advance six theories in support of their September 15, 1982 summary judgment motion. The first—and strongest—of these theories is that defendants enjoy absolute immunity because they are "responsible for decisions to initiate or continue administrative enforcement proceedings." [3]

The quoted language is, of course, extracted from the famous *United States* Supreme Court opinion of *Butz v. Economou.*[4]

*Butz* was a multidimensional opinion dealing with the subject of constitutional tort immunity. Specifically, *Butz* involved a *Bivens* direct constitutional tort action against a federal official. Nevertheless, since section 1983 immunity analysis is identical to *Bivens* immunity analysis, *Butz* is an applicable precedent in the instant case. *See Harlowe v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The portion of *Butz* applicable here involved the application of the absolute judicial and prosecutorial immunities to analogous positions in administrative agencies.[5] The *Butz* Court held that administrative law judges and administrative agency attorneys initiating enforcement proceedings enjoy the same absolute immunity enjoyed by judicial judges and prosecutors.

If the Court were writing on a fresh slate it would have real problems recognizing *any* type of governmental immunity in section 1983 actions. Section 1983 was, of course, section 1 of the Civil Rights Act of 1871—the Ku Klux Klan (KKK) Act. The reconstruction era was the first high point in the Klan's sinusoidal American history, and evidence abounds that the reconstruction KKK had infiltrated nearly every area of southern government.[6]

The undoubted purpose of section 1983 was to afford the newly-freed southern blacks a federal court forum and right of action to redress constitutional violations committed by Klansmen or KKK sympathizers.[7] Neither the language nor the legislative history of section 1983 suggests that its drafters contemplated absolute—or any other—immunity for government officials. Thus, this Court—like Justice Marshall[8]—cannot help but wonder how and why immunities have become ensconced in section 1983 jurisprudence.

To be sure the Court appreciates the policy reasons supporting immunities. The absence of immunities would no doubt impair and inhibit the vigorous performance of

---

**3.** *See* p. 2 of brief at docket entry # 42.

**4.** 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

**5.** *See id* 438 U.S. at 508–16, 98 S.Ct. at 2911–15.

**6.** The legislative history of the Civil Rights Act of 1871 is replete with reference to the Klan. The Act's drafters again and again referred to testimony concerning the Klan given before a Congressional investigative committee. The testimony indicated that the secret order—with its oaths, mysticism and regalia—bound its members to subvert the law in furtherance of Klan objectives. *See* Cong.Globe 42nd Cong. 1st Sec. 152, 158, 320–21, 443–44, 501, 516, 518, 653.

The Klan's strange powers reappeared in America in the second decade of the twentieth century. There are historians who estimate that during that era, nearly every Christian adult white male in the south was a member or sympathizer of the Klan. *See* Gossett, *Race: The History of an Idea in America,* chapter 5.

**7.** *See* the discussion of the legislative history of section 1983 in Justice Marshall's majority opinion in *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

**8.** *See* Justice Marshall's dissenting opinion in *Briscoe v. LaHue,* —— U.S. ——, ——————, 103 S.Ct. 1108, 1121–33, 75 L.Ed.2d 96, 114–29 (1983). This dissent is a particularly rich and enlightening discussion of the section 1983 legislative history. After studying the *Briscoe* dissent, even the case for judicial immunity seems very weak.

certain officials.[9] But section 1983 is a statute—not a constitutional provision,[10] and when statutes are involved, judges have no power to impose their own ideas of wise policy. This Court thus believes that immunities should have been added by statutory amendment to section 1983, rather than by judicial decision.

In any event, this Court recognizes that its present task is limited to applying *Butz* to the facts posed by this case. Two recent Sixth Circuit cases afford excellent guidance in this area.

In *Corey v. New York Stock Exchange*,[11] the Sixth Circuit held that the New York Stock Exchange, acting through its arbitrators is immune from civil liability for the acts of arbitrators arising out of contractually-agreed upon arbitration proceedings. Although *Corey* was not a constitutional tort case, the Sixth Circuit applied the *Butz* precedent. The *Corey* Court indicated that officials performing functionally equivalent tasks to judges and prosecutors [12] are entitled to absolute immunity.

Similarly, in *UAW v. Greyhound Lines*,[13] the Sixth Circuit held that arbitrators are absolutely immune from ERISA liability. The *Greyhound Lines* opinion emphasized that a functional approach must be taken in determining whether the judicial or prosecutorial absolute immunity is applicable.

Here, both defendants have asserted the absolute immunity defense. First consideration will be given to defendant Harpowiski's assertion of the defense in light of *Butz, Corey* and *Greyhound Lines.*

Defendant Harpowiski, determined that plaintiff's

"continued freedom in general population pending the hearing would constitute a threat to good order and security of the institution."

In deciding the issue of whether Harpowiski is entitled to absolute immunity, the Court, must engage in a functional analysis; that is, it must determine whether Harpowiski's duties were akin to the duties of a judicial official.

■ Harpowiski was called upon to determine whether plaintiff should remain in general population pending the outcome of the misconduct charge.[14] Harpowiski found that plaintiff was a threat to the institution and thus should be placed in administrative segregation. The Court believes that Harpowiski's function was similar to that of a Magistrate in criminal proceedings. Just as a Magistrate binds defendants over for trial and sets bond, Harpowiski made the preliminary determination that plaintiff should be segregated from other inmates. Thus, the Court believes that Harpowiski functioned in a judge-like capacity.

It follows ineluctably that Harpowiski is absolutely immune from this lawsuit. The Court has its doubts about whether Harpowiski's decision was reasonable and whether the original misconduct citation was valid. But this is irrelevant with respect to Harpowiski's liability in this case. Since Harpowiski was acting in his Magistrate-like capacity, he is immune from

**9.** The Supreme Court repeatedly mentions this policy concern in its section 1983 immunity opinions. *See e.g., Butz v. Economou,* 438 U.S. 478, 510–12, 98 S.Ct. 2894, 2912–13, 57 L.Ed.2d 895 (1978); *Imbler v. Pachtman,* 424 U.S. 409, 422–24, 96 S.Ct. 984, 991–92, 47 L.Ed.2d 128 (1976); *Scheuer v. Rhodes,* 416 U.S. 232, 241, 94 S.Ct. 1683, 1688, 40 L.Ed.2d 90 (1974); *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967).

**10.** There is, of course, a school of thought that would allow a measure of judicial policy making in constitutional cases—especially where the constitutional language is broad. *See e.g.,* Karst, *The Freedom of Intimate Association,* 89 *Yale* L.J. 624 (1980); Perry, *Abortion, The Public Morals, and the Police Power: The Ethical Function of Substantive Due Process,* 23 UCLA 1 Rev 689 (1976). *But see* Grano, *Judicial Review and A Written Constitution in a Democratic Society,* 28 *Wayne* L Rev 1 (1981). Professor Grano is a most vigorous critic of noninterpretivism. *See also* the classic noninterpretivism critique by Professor Berger, *Government by Judiciary,* (1977).

**11.** 691 F.2d 1205 (CA 6, 1982).

**12.** *See id* at 1209–1211.

**13.** 701 F.2d 1181 (CA 6, 1983).

**14.** *See* complaint ¶¶ 11–15.

plaintiff's claim in this lawsuit. Therefore, the Court must grant Harpowiski's motion for summary judgment based on the theory of absolute immunity described herein.

■ The Court next considers the absolute immunity argument asserted by defendant Smith. Under the *Butz—Corey* analysis, we focus on the nature of Smith's function. Smith was the officer who originally cited plaintiff for the misconduct violation. Clearly, Smith's role was equivalent to that of a police officer.

In a very real sense, the American police officer is involved in the "initiation" of criminal proceedings. The first point on the prosecution continuum often is the police officer's decision to arrest a suspect. As Professor Davis has pointed out, this decision—often made on the spur of the moment—reflects great discretion.[15] Nevertheless, it is obvious that police officers are not protected by the absolute immunity afforded to prosecutors. Indeed, a very considerable portion of section 1983 litigation involves police officer defendants.[16]

It follows that the Court rejects Smith's absolute immunity. Smith's role certainly was not similar to the role of a judge. And for purposes of section 1983 immunity rulings, Smith's role cannot be viewed as within the scope of section 1983 prosecutorial immunity. Thus, plaintiff's claim against Smith is not subject to dismissal based upon absolute immunity.

b. *State Common Law Immunity Theory*

Defendant Smith[17] next contends that he is entitled to the absolute immunity provided by the Michigan common law, an immunity enjoyed by certain state officers. This argument is wholly misplaced. Section 1983 is a federal statutory claim. The recognition of immunity defenses to this claim results from pure federal statutory interpretation.[18]

It follows that the Michigan common law immunities do not govern section 1983 immunity analysis. Where a section 1983 defendant asserts an immunity, the judicial inquiry must focus on whether the section 1983 drafters intended this immunity to apply. This inquiry is entirely distinct from an inquiry that focuses on the common law immunities created over the years by devel-

---

**15.** *See* 2 *Administrative Law Treatise,* § 191.

**16.** *See* discussion of police officers' liability in *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

**17.** The motion for summary judgment was brought by the assistant attorney general on behalf of both defendants. Since defendant Harpowiski has been dismissed from this case, the remaining theories in the motion are applicable only with respect to defendant Smith. Thus, the Court will refer to the remaining theories as "defendant Smith's theories."

**18.** Professor Whitman asserts that

"The federal courts have not always limited their search for secondary rules to the law of a particular state; at times, they appealed to general common-law principles. The rationale then rests not on the mandate of section 1988, but on the proposition that the legislators who enacted section 1983 were schooled in the principles of the common law and thus were likely to have intended that some of these principles be applied to actions under section 1983." *See Constitutional Torts,* 79 Mich L Rev 1, 16–17 (1980).

The reference by Professor Whitman to section 1988 applies, of course, to the portion of that section that provides as follows:

"but in all cases where [the laws of the United States] are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held ... shall be extended to and govern the said courts in the trial and disposition of the case."

And the Court agrees with Professor Whitman that section 1988 does *not* apply to the law of immunities under section 1983.

As the Court has indicated earlier in this opinion, it has real doubts that the section 1983 legislation intended immunities to apply in section 1983 actions. A more believable legal fiction would be that the section 1983 drafters intended to allow the judiciary to draft a federal common law system of immunities over the years. *See generally* Redish, *Federal Jurisdiction: Tensions in the Allocation of Judicial Power* 82. Even this, however, is rather unconvincing.

opment of the Michigan common law with respect to claims based on Michigan Tort claims.

What defendant Smith fails to grasp is that section 1983 is a supplement to state tort law with a supplementary system of claims and defenses.[19] And thus the Michigan immunities asserted by defendant Smith must be rejected out of hand.

### c. Defendant Smith's Qualified Immunity Theory

■ Defendant Smith next asserts that this action should be dismissed on the basis of the defendant's qualified immunity from section 1983 actions. The last time the Sixth Circuit addressed the qualified immunity issue was in the May 3, 1983 *Alexander v. Alexander*[20] opinion which interpreted the 1982 Supreme Court *Harlowe v. Fitzgerald* case and provides guidance for analyzing the issue at bar.

■ Under *Alexander,* a defendant can establish the qualified immunity defense by pleading and proving either that the plaintiff's constitutional tort claim was not clearly established at the time the alleged claim arose or that defendant neither knew nor should have known about this constitutional tort claim due to extraordinary circumstances.[21] Thus, application of the *Alexander* analysis consists of two steps. First, the Court must focus on the nature of the constitutional tort asserted by plaintiff. This accomplished, the Court must determine what the law was as to plaintiff's claim as of 1974. Finally, the Court must determine whether plaintiff's claim was established as 1974 or whether defendant knew or should have known of the existence of plaintiff's claim.

With respect to the first step of the *Alexander* analysis, the Court concludes that plaintiff's only claim[22] is that of procedural due process. Plaintiff is alleging that Smith gave him a misconduct ticket knowing that he had a pass and was thus entitled to be in the block. Plaintiff alleges—and the Court recognizes[23]—that the Department of Corrections has rules establishing the types of conduct warranting a misconduct citation. These rules arguably create a procedural due process liberty interest in plaintiff such that plaintiff cannot be cited for misconduct unless he violates these rules.[24] Thus, when Smith allegedly gave plaintiff a misconduct ticket despite his knowledge of plaintiff's innocence, Smith violated plaintiff's liberty interest. And plaintiff was *not* given due process of law by way of his eventual acquittal on the misconduct charge. Indeed, if plaintiff's allegation is true, he was denied four days of liberty without due process of law prior to the acquittal, and defendant Smith is arguably liable for the damages suffered by plaintiff during the four-day period.

With plaintiff's constitutional tort claim in focus, consideration must be given to whether the claim was established at the time of the alleged violation. In this case, the claim allegedly arose in November of 1974. Thus, the Court must consider: (a) whether the Corrections Department had rules protecting inmates from administrative segregation absent misconduct viola-

---

**19.** *See Monroe v. Pape,* 365 U.S. 167, 195–96, 81 S.Ct. 473, 488, 5 L.Ed.2d 492 (1961) (concurring opinion of Justice Harlan). *See also* Whitman, *Constitutional Torts,* 79 Mich L Rev 5, 22–23.

**20.** 706 F.2d 751 (CA 6, 1983).

**21.** *See id.* The *Alexander* opinion was, of course, guided by the 1982 Supreme Court qualified immunity opinion in *Harlowe v. Fitzgerald,* 102 S.Ct. 2727 (1982).

**22.** Plaintiff has, of course, now added a harassment claim by amendment. The summary judgment motion, however, was filed prior to the addition of the claim and thus does not refer to it.

**23.** *See* the opinion of the Court in *Walker v. Johnson,* 544 F.Supp. 345 (ED Mich., 1982). *See also* Judge Cohn's opinion in *Riley v. Johnson,* 528 F.Supp. 333 (ED Mich., 1981).

**24.** *See Bills v. Henderson,* 631 F.2d 1287 (CA 6, 1980); *Walker v. Hughes,* 558 F.2d 1247 (CA 6, 1977). This Court discussed *Bills* and *Hughes* in detail in *Walker v. Johnson,* 544 F.Supp. 345 (ED Mich., 1982).

tions in 1974 and (b) whether the law recognized plaintiff's claim in November, 1974.

The present record certainly does not reflect the existence or lack of existence of the rule as of 1974. But the Court must also recognize that defendant has the burden of proving the qualified immunity defense.[25] And defendant has not shown the Court that no such rule existed as of 1974. Thus, the Court, taking plaintiff's allegations as true, will assume that rules existed as of November, 1974 protecting Michigan Department of Corrections inmates against administrative segregation assignments absent the commission of specified conduct.[26]

The Court next considers whether plaintiff's claim was recognized as a constitutional tort claim as of 1974. As was mentioned, plaintiff has asserted a procedural due process claim. Plaintiff alleges that the state created a liberty interest of which defendant Smith deprived plaintiff without due process of law.

Plaintiff's claim is the prototype procedural due process claim. This doctrine was reborn in its modern form as of 1970 in the Supreme Court case of *Goldberg v. Kelly*.[27] Furthermore, on June 26, 1974, the Supreme Court applied the *Goldberg* doctrine in the context of prisons. On that date, the high Court rendered its opinion in *Wolff v. McDonnell*,[28] wherein it ruled that a wide range of inmate procedural due process rights had been created by Nebraska statutes and regulations.[29]

In light of *Goldberg* and *Wolff*, this Court believes that plaintiff's alleged procedural due process claim was well established as of 1974. Furthermore, again assuming the existence of the prison rules,[30] the Court believes that Smith should have known of plaintiff's constitutional right to be free from misconduct citation absent the commission of certain conduct. Thus, the Court believes that defendant Smith has not established his qualified immunity claim, and this Court must reject the qualified immunity defense.

#### d. Eleventh Amendment Theory

Defendants next contend that this action is foreclosed by the state's sovereign immunity created by the Eleventh Amendment to the United States Constitution. The Eleventh Amendment, of course, protects the state from money judgments in federal court actions.[31] The Amendment does not, however, extend to protect individual defendants who commit constitutional torts in the scope of their duties.[32] Accordingly, plaintiff is not foreclosed by the Eleventh Amendment from collecting damages from Mr. Smith individually. Therefore, the Court rejects the Eleventh Amendment sovereign immunity defense.

#### e. Failure To State a Claim Defense

Defendants next contend that plaintiff has failed to state a claim upon which relief can be granted. In this respect, defendants argue that plaintiff's four-day administrative segregation confinement was not so severe as to amount to cruel and unusual punishment.

25. *See Wolfel v. Sanborn,* 666 F.2d 1005 (CA 6, 1981).

26. Absent such rules, plaintiff's claim of denial of procedural due process would be very weak. The claim would depend on the thesis that there is something inherent in the due process clause that protects inmates against administrative segregation absent certain procedural due process guarantees. The Supreme Court decisively rejected this claim in *Helms v. Hewitt,* — U.S. —, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).

27. 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

28. 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

29. *See generally id.*

30. If no such rules existed as of 1974, defendants should reassert the qualified immunity defense in a renewed summary judgment motion. *See fn. 26 supra,* — U.S. —, 103 S.Ct. 864, 74 L.Ed.2d 675.

31. 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

32. *See Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

The argument is irrelevant here because plaintiff has not asserted an Eighth Amendment theory. Plaintiff's theories are based on the procedural component of the due process clause to the equal protection claim.[33] As has been discussed earlier in this opinion, plaintiff's allegations state a claim under the due process clause. The Court, however, agrees that plaintiff's equal protection clause claim is not well taken. The claim asserted by plaintiff does not impinge on fundamental rights or burden a suspect equal protection clause classification.[34] Thus, the equal protection claim must be rejected. It will be recalled, however, that plaintiff has asserted an equal protection clause theory in connection with his newly-added reprisal claim. This theory remains in this lawsuit.

### f. Argument Against Affording Plaintiff Injunctive Relief

■ Finally, defendant Smith argues that this Court is not adequately equipped to order injunctive relief in this case. Plaintiff included a request for injunctive relief against reprisals in his initial complaint. Apparently, this is the basis of defendant's argument. Obviously, the argument is more immediately applicable to the claim plaintiff has now added by amendment.

This Court avidly studies the Sixth Circuit opinions in the area of civil rights law, and the Court readily acknowledges that these opinions often contain an assertion that federal courts should be reluctant to become involved in the day-to-day operation of prison life. Indeed, this philosophy was particularly evident in two late July Sixth Circuit opinions rejecting section 1983 prison claims.[35]

Here, however, the state's argument is very weak. Plaintiff is not asking the Court to draft an injunction that significantly affects or changes prison life. Instead, plaintiff merely is asking to be left alone while he asserts his legal rights. Clearly, defendant's argument is misplaced and must be rejected by this Court.

### g. Plaintiff's March 4, 1981 Motion for Summary Judgment

■ On March 4, 1981, plaintiff filed a motion for summary judgment. Therein, plaintiff contended that his unanswered requests for admission filed on December 24, 1981 established that plaintiff is entitled to judgment on the issue of liability in this case.

The Court disagrees. Defendant answered plaintiff's requests on February 17, 1983. Although these answers were filed beyond the Rule 36 of the Federal Rules of Civil Procedure time limit, the Court has the discretion to consider them. See Wright & Miller, Federal Practice & Procedure § 2257. When these answers are considered, it is clear that plaintiff has not eliminated all genuine issues of fact as to whether defendant Smith violated plaintiff's procedural due process rights when he issued the November 26, 1974 ticket to plaintiff. Thus, the Court denies plaintiff's March 4, 1981 motion for summary judgment.

## III CONCLUSION AND ORDER

For the reasons stated in the foregoing opinion, the Court hereby renders the following rulings:

Plaintiff's September 8, 1982 and November 22, 1982 motions, having been viewed as a unitary motion for leave to amend and thereby add a harassment claim, are GRANTED. Defendant Smith is ordered to file a response to this claim within twenty days from the date of this Opinion.

The September 15, 1982 motion for summary judgment filed by defendants is GRANTED as to defendant Harpowiski thereby dismissing defendant Harpowiski

---

33. See complaint at docket entry # 1.

34. See this Court's discussion of the equal protection claim in *Mid-State Food Dealers v. City of Durand*, 525 F.Supp. 387 (ED Mich., 1981).

35. See *Dufrin v. Spreen*, 712 F.2d 1084 (CA 6, 1983); *Thompson v. Commonwealth*, 712 F.2d 1078 (CA 6, 1983).

from this case. The said motion is GRANT-ED as to the equal protection clause theory asserted by defendant Smith in connection with the November 26, 1974 incident giving rise to this lawsuit. But the September 15, 1982 motion for summary judgment is DE-NIED as to plaintiff's procedural due process theory.

Plaintiff's March 4, 1981 motion for summary judgment is DENIED.

In light of the above, defendant Smith remains in this case, and plaintiff retains his procedural due process claim against the said defendant and harassment claims against the defendant added by the amendment which plaintiff has now been granted leave to file. The parties are advised of the following schedule:

| | |
|---|---|
| Discovery cut-off date: | December 1, 1983. |
| Pretrial motions cut-off date: | January 3, 1984. |
| Joint pretrial statement due: | February 6, 1984. |
| Final pretrial co ference date: | March 16, 1984; 4:00 p.m. |
| Jury Trial date: | March 26, 1984; 8:30 a.m. |

IT IS SO ORDERED.