# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 7, 2020

No. 18-31184

Lyle W. Cayce
Clerk

TEXAS BRINE COMPANY, L.L.C.,

Plaintiff – Appellant

v.

AMERICAN ARBITRATION ASSOCIATION, INCORPORATED; ANTHONY M. DILEO; CHARLES R. MINYARD,

Defendants – Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before SOUTHWICK, WILLETT, and OLDHAM, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

One of the parties to an arbitration claimed that two of the arbitrators hid conflicts of interest. Those claims were the basis on which a Louisiana state court vacated the arbitral award. The aggrieved party then brought suit in Louisiana state court seeking substantial damages against one out-of-state defendant and two in-state defendants. The out-of-state defendant was served with process and immediately removed the case to federal court before the in-state defendants were served. The plaintiff moved to remand. The district court held that this removal prior to service on the nondiverse defendants was

No. 18-31184

proper and refused to remand.  The district court then entered a judgment on the pleadings, dismissing the plaintiff's claims with prejudice.  We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

In reviewing an order granting judgment on the pleadings, we accept the factual allegations in the plaintiff's complaint as true.  *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312–13 (5th Cir. 2002).  What follows are therefore from the complaint.

In 1975, plaintiff Texas Brine Company, L.L.C., contracted with Vulcan Materials Company to supply brine.  Among agreed-on amendments to the contract in 2000 was the addition of an arbitration clause.  The clause provided that "[a]ny dispute, controversy or claim arising out of or relating to" the contract or its breach would be resolved by arbitration.  The clause further provided that any arbitration would be conducted under the rules of the American Arbitration Association ("AAA") and would be governed by the Federal Arbitration Act.  In 2005, Vulcan assigned its rights under the contract to Occidental Chemical Corporation ("Oxy").

After a dispute arose between Texas Brine and Oxy in 2012, Texas Brine invoked the arbitration clause.  Texas Brine and Oxy chose Anthony DiLeo, Charles Minyard, and Denise Pilié as arbitrators in 2014.  The prospective arbitrators had to disclose potential conflicts of interest.  After selection, the arbitrators signed an oath that recognized a continuing duty to disclose potential conflicts.

Early in 2018, Texas Brine learned that DiLeo was representing a corporation in a dispute in which the opposing counsel was also Texas Brine's counsel in its dispute with Oxy.  Minyard, too, had become involved as DiLeo's attorney in a related legal-malpractice action.  DiLeo and Minyard had not

disclosed these potential conflicts.  Texas Brine moved the AAA to remove both DiLeo and Minyard, but the AAA's Administrative Review Council summarily denied the motions.  A few weeks later, though, the AAA removed Minyard from the arbitration panel due to an offensive comment he made to Texas Brine's counsel.  Texas Brine again urged the removal of DiLeo.  The day after the renewed urging, both DiLeo and Pilié resigned.

Texas Brine filed a motion in Louisiana state court to vacate the panel's awards and for reimbursement of fees, including approximately $550,000 in arbitrator fees and $17,300 in administrative expenses that Texas Brine had paid the AAA before the panel was disbanded.  In June 2018, the court vacated all the arbitral panel's rulings on contested issues pursuant to 9 U.S.C. § 10(a)(2) and LA. STAT. ANN. § 94210(B).  Neither party appealed the vacatur. The AAA was not a party to the state-court proceeding, and the AAA continued the process of appointing a replacement panel.

On July 6, 2018, Texas Brine filed the current suit against the AAA, DiLeo, and Minyard in the Civil District Court of the Parish of Orleans.  Texas Brine requested over $12 million in damages and equitable relief, alleging that the defendants engaged in intentional and wrongful fraudulent conduct in connection with the arbitration proceedings.  On July 11, before Louisiana residents DiLeo and Minyard had been served, the AAA removed the case to the United States District Court for the Eastern District of Louisiana.  The AAA, DiLeo, and Minyard each filed answers and moved to dismiss Texas Brine's claims under Rule 12(c) of the Federal Rules of Civil Procedure.

The jargon for removal prior to service on all defendants is "snap removal."  On August 9, Texas Brine moved to remand, challenging the AAA's snap removal and disagreeing with the contention that DiLeo and Minyard were improperly joined.  The district court denied the motion on October 11,

holding that the plain language of the removal statute did not bar snap removal. The court did not reach the alternate ground of fraudulent joinder. On November 2, the district court granted the defendants' motions to dismiss, then entered judgment dismissing Texas Brine's claims with prejudice. Texas Brine appeals from the denial of remand and from the final judgment.

## DISCUSSION

We review orders denying remand *de novo*, and the party who sought removal has the burden of proving removal was proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 722–23 (5th Cir. 2002). Any necessary statutory interpretation is performed *de novo*. *Cervantez v. Bexar Cnty. Civil Serv. Comm'n*, 99 F.3d 730, 732 (5th Cir. 1996). Finally, dismissals under Federal Rule of Civil Procedure 12(c) are reviewed *de novo*. *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002). We first consider the denial of the motion to remand and then consider the judgment on the pleadings.

*I.     Snap Removal*

A defendant may remove a civil case brought in state court to the federal district court in which the case could have been brought. 28 U.S.C. § 1441(a). In diversity cases, there is an additional limitation on removal, known as the forum-defendant rule. The rule provides that

> [a] civil action otherwise removable solely on the basis of the jurisdiction under [28 U.S.C. § 1332(a)] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

§ 1441(b)(2). The question in this case is whether the forum-defendant rule prohibits a non-forum defendant from removing a case when a not-yet-served defendant is a citizen of the forum state. Although we have not yet had

opportunity to address the "snap removal" issue, two other circuits have recently interpreted Section 1441(b)(2) as allowing snap removal. *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147 (3d Cir. 2018). The Sixth Circuit in a footnote has also interpreted Section 1441(b)(2) to allow snap removal. *McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001).

We begin by recognizing that the forum-defendant rule is a procedural rule and not a jurisdictional one. *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 392–93 (5th Cir. 2009). Here, the district court had subject-matter jurisdiction because each defendant was diverse from the plaintiff. *Id.* at 393–94. The plaintiff is a Texas limited liability company. The defendants are a New York corporation (the AAA) and two individual citizens of Louisiana (DiLeo and Minyard). Thus, there is no jurisdictional defect under 28 U.S.C. § 1332(a).

"[W]hen the plain language of a statute is unambiguous and does not lead to an absurd result, our inquiry begins and ends with the plain meaning of that language." *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 630 F.3d 431, 438 (5th Cir. 2011) (quotation marks omitted). We look for both plain meaning and absurdity. By Section 1441(b)(2)'s terms, this case would not have been removable had the forum defendants been "properly joined and served" at the time of removal. Minyard and DiLeo had not been served, though. When the AAA filed its notice of removal, the case was "otherwise removable" — as required by Section 1441(b) — because the district court has original jurisdiction of a case initially filed in Louisiana state court in which the parties are diverse. § 1441(a); § 1332(a). The forum-defendant rule's procedural barrier to removal was irrelevant because the only defendant "properly joined and served," the AAA, was not a citizen of Louisiana, the forum state. *See* § 1441(b)(2). We agree with a comment made by the Second

Circuit: "By its text, then, Section 1441(b)(2) is inapplicable until a home-state defendant has been served in accordance with state law; until then, a state court lawsuit is removable under Section 1441(a) so long as a federal district court can assume jurisdiction over the action." *Gibbons*, 919 F.3d at 705.

Texas Brine accepts that the statute's plain language allows snap removal. It argues, though, that such a result is absurd and defeats Congress's intent. *See Schaeffler v. United States*, 889 F.3d 238, 242 (5th Cir. 2018). Texas Brine asserts that Congress added the "properly joined and served" language to Section 1441(b)(2) to prevent plaintiffs from naming forum defendants merely for the purpose of destroying diversity. That purpose is not served here because Texas Brine intended to pursue its claims against the forum defendants. The AAA counters that there is no meaningful legislative history of the "properly joined and served" language, even if we were inclined to consider such history. Further, Congress did not revise that language when it amended Section 1441(b)(2) in 2011 even after some snap removals had occurred.

In statutory interpretation, an absurdity is not mere oddity. The absurdity bar is high, as it should be. The result must be preposterous, one that "no reasonable person could intend." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 237 (2012); *see also United States v. Dison*, 573 F.3d 204, 210 n.28 (5th Cir. 2009). In our view of reasonableness, snap removal is at least rational. Even if we believed that there was a "drafter's failure to appreciate the effect of certain provisions," such a flaw by itself does not constitute an absurdity. SCALIA & GARNER, *supra*, at 238. We are not the final editors of statutes, modifying language when we perceive some oversight. The Second and Third Circuits rejected the same absurdity argument in upholding snap removal. The Second Circuit believed

there was more than one sensible reason for the language "properly joined and served":

> Congress may well have adopted the "properly joined and served" requirement in an attempt to both limit gamesmanship and provide a bright-line rule keyed on service, which is clearly more easily administered than a fact-specific inquiry into a plaintiff's intent or opportunity to actually serve a home-state defendant.

*Gibbons*, 919 F.3d at 706.  In other words, a reasonable person could intend the results of the plain language.  The Third Circuit also found that the result was not absurd because the interpretation gives meaning to each word and abides by the plain language.  *Encompass*, 902 F.3d at 153.  Of some importance, the removing party is not a forum defendant.  Diversity jurisdiction and removal exist to protect out-of-state defendants from in-state prejudices.  *See J.A. Olson Co. v. City of Winona*, 818 F.2d 401, 404 (5th Cir. 1987).  The plain-language reading of the forum-defendant rule as applied in this case does not justify a court's attempt to revise the statute.

Texas Brine also argues that the removal here is an example of an abuse of the statute.  We have stated in *dicta* that "exceptional circumstances" might, in some cases where a plaintiff acts in bad faith, warrant departing from a strict application of the rule that removal may not happen more than 30 days after the first defendant is served.  *E.g.*, *Brown v. Demco, Inc.*, 792 F.2d 478, 482 (5th Cir. 1986).  In such cases, we considered whether a district court's equitable powers extended to permit late filing for removal.  *E.g.*, *Doe v. Kerwood*, 969 F.2d 165, 169 (5th Cir. 1992); *Ortiz v. Young*, 431 F. App'x 306, 307 (5th Cir. 2011).  Those cases may support tolling removal-filing deadlines in exceptional cases, but they do not support rewriting the statute here.  We will not insert a new exception into Section 1441(b)(2), such as requiring a reasonable opportunity to serve a forum defendant.

No. 18-31184

It is true, as Texas Brine points out, that we strictly construe the removal statute and favor remand. *See Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007). Here, though, we do not have "any doubt about the propriety of removal" because, as discussed, the text is unambiguous. *Id.* So the rule in *Gasch* does not apply. *Id.* A non-forum defendant may remove an otherwise removable case even when a named defendant who has yet to be "properly joined and served" is a citizen of the forum state.

## II.    *Exclusive Remedy*

Having held that the case properly was retained in federal court, we now review the district court's decision to grant judgment for the defendants on the pleadings. The district court held that the defendants enjoyed arbitral immunity and that the Federal Arbitration Act ("FAA") provided the exclusive remedy for complaints of bias or a corrupt arbitrator's conduct. Because these are independent reasons for dismissal, our agreement with either obviates the need to consider the other. Here, we rule on exclusive-remedy grounds and do not opine on the legitimacy of arbitral immunity.

Judicial review in the arbitration context is limited. The Supreme Court has held that the statutory bases for vacating an arbitrator's award are the only grounds on which a court may vacate an award. *Hall St. Assocs. L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008) (citing 9 U.S.C. §§ 10 & 11). Relying on *Hall Street*, this court rejected one effort to go beyond the statutory language by holding that "manifest disregard of the law" is not an independent ground for challenging an arbitral award. *Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009). Further, purportedly independent claims are not a basis for a challenge if they are disguised collateral attacks on the

arbitration award. *Gulf Petro Trading Co. v. Nigerian Nat'l Petroleum Corp.*, 512 F.3d 742, 747, 750 (5th Cir. 2008).

The defendants argue that Texas Brine's suit is an impermissible collateral attack on the arbitration award that seeks to bypass the congressionally created remedy for challenging an arbitration through a vacatur or modification proceeding. The defendants rely in part on two Sixth Circuit cases in which the court found an impermissible collateral attack on the arbitration award. *Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 205 F.3d 906 (6th Cir. 2000); *Corey v. New York Stock Exch.*, 691 F.2d 1205 (6th Cir. 1982). Texas Brine argues that those cases are distinguishable, and to the extent that the reasoning of those decisions is applicable, we should reject the reasoning as flawed. We have previously applied those very cases, though, to determine whether a party was attempting an impermissible collateral attack on an arbitration award. *Gulf Petro*, 512 F.3d at 750. The question then is whether Texas Brine's claims constitute impermissible collateral attacks.

In the Sixth Circuit's *Corey* decision, an arbitration panel dismissed a plaintiff's claim and assessed costs against him; the plaintiff did not appeal or move to vacate the judgment within the statutory period. 691 F.2d at 1208. The plaintiff sued the arbitrators and the sponsoring organization, alleging that the latter deprived him of a fair hearing by "select[ing] members of the arbitration panel in violation of the [sponsoring organization's] rules" and by rescheduling hearings over the plaintiff's objections. *Id.* The plaintiff also alleged that the arbitrators had prejudged the merit of his claims and inappropriately disallowed certain evidence. *Id.* The plaintiff asked for punitive damages for the mental anguish and physical problems he alleged occurred because of these acts. *Id.*

No. 18-31184

The Sixth Circuit held that the FAA was the exclusive remedy for the alleged wrongdoing and that the plaintiff's claims impermissibly collaterally attacked the arbitration award. *Id.* at 1211–12. The wrongdoing alleged in the complaint was "squarely within the scope of section 10 of the Arbitration Act." *Id.* at 1212. The court noted that the complaint "challenge[d] the very wrongs affecting the award for which review is provided under section 10 of the Arbitration Act. The mere presence of the [sponsoring organization] or the arbitrators or the prayer for damages does not change the substance of [the plaintiff's] claim." *Id.* at 1213. As a result, the court affirmed the district court's summary judgment in favor of the defendant. *Id.*

The Sixth Circuit expounded on its approach to analyzing collateral attacks in *Decker*. There, the plaintiff brought tortious interference and breach-of-contract claims. *Decker*, 205 F.3d at 909–10. The court held that these were impermissible collateral attacks because the plaintiff's harm resulted from the prejudice to the plaintiff in the arbitration proceedings and the impact on the arbitration award. *Id.* at 910.

We have used the Sixth Circuit decisions in our analysis of a collateral attacks on an arbitration award. In *Gulf Petro*, the plaintiff asserted claims under the Racketeer Influenced and Corrupt Organizations Act, the Texas Deceptive Trade Practices Act, and Texas common-law fraud and the tort of civil conspiracy; it sought vacatur of the arbitration award under the FAA. 512 F.3d at 745. The plaintiff sought damages for "(1) costs and expenses of the arbitration and subsequent legal challenges; (2) lost expenses and profits that would have been awarded had the panel rendered a fair award; (3) reputational injury suffered as a consequence of not prevailing in the arbitration; and (4) lost business opportunities suffered as a consequence of not prevailing in the arbitration." *Id.* at 749.

No. 18-31184

We held that to categorize a claim against an arbitration decision, we look to "the relationship between the alleged wrongdoing, purported harm, and arbitration award." *Id.* The test for a collateral attack is not merely whether the claims "attempt to relitigate the facts and defenses that were raised in the prior arbitration." *Id.* at 749–50. Such a limitation would not align with *Corey* and *Decker*, "where the plaintiffs were found to be engaged in collateral attacks even though they did not attempt to relitigate the facts and defenses of the underlying disputes that had prompted arbitration, but instead were alleging that wrongdoing had tainted the arbitration proceedings and caused unfair awards." *Id.* at 750. We found that the plaintiff's claims in *Gulf Petro* constituted a collateral attack because the plaintiff was seeking to remedy wrongdoing that Section 10 was meant to address. *Id.*

We now apply this analysis to Texas Brine's claims. We start with the alleged wrongdoing. Alleging wrongdoing that would justify vacatur is a sign of a collateral attack. *Id.* at 749. In *Gulf Petro*, the plaintiff alleged two kinds of wrongdoing: first, that the defendant bribed the arbitrators for a favorable outcome and, second, that the arbitrators failed to disclose their business dealings and *ex parte* communications with the defendant. *Id.* Texas Brine alleges similar wrongdoing involving the arbitrators' failure to disclose potential conflicts of interest. Further, the alleged wrongdoing here resembles the wrongdoing that led the Louisiana court to vacate the underlying arbitration awards, namely, the arbitrators' conflicts of interest. This wrongdoing is "squarely within the scope of section 10" of the FAA, *Corey*, 691 F.2d at 1212, which allows for vacatur based on "evident partiality or corruption in the arbitrators," 9 U.S.C. § 10(a)(2).

Next, we look to the purported harm. *See Gulf Petro*, 512 F.3d at 749. In its petition for damages, Texas Brine alleges harm that we may summarize

11

into a few categories: (1) the strategic disadvantage in the arbitration process due to arbitrator bias; (2) a "tainted" arbitration; and (3) wasted money spent on the arbitration.  For example, Texas Brine alleges that the nondisclosure of conflicts of interest "deprived Texas Brine of the opportunity to make an informed decision as to [DiLeo's] continued service as an arbitrator."  Texas Brine also contends that the arbitrators had an "unjust advantage" in the proceedings because of the nondisclosure.  As in *Decker* and *Corey*, the harm to Texas Brine from the strategic disadvantage and the "tainted" arbitration ultimately manifested in its effect on the arbitration awards.  *Decker*, 205 F.3d at 910.  This means that it is the kind of harm appropriately remedied through Section 10 of the FAA.  *Id.*  Further, in *Gulf Petro*, the fact that the plaintiff sought costs and expenses did not affect our finding that the plaintiff was collaterally attacking the arbitration award.  512 F.3d at 749–50.  The purported harm in this case is of the kind that *Gulf Petro*, *Corey*, and *Decker* addressed.

Last, we look to the requested relief and its relationship to the alleged wrongdoing and purported harm.  *See Gulf Petro*, 512 F.3d at 749.  Texas Brine complains that "[v]acatur is an incomplete remedy."  Instead, the argument goes, Texas Brine should be reimbursed for all the fees and costs it paid during the arbitration and state-court litigation.  According to Texas Brine, it is owed over $12 million, including over $560,000 from fees paid directly to the AAA and the arbitrators.  In its prayer for relief, Texas Brine requested that the court grant various forms of relief and that the court find "such relief is delictual [*i.e.*, based on tort], or alternatively, contractual, in nature."  Texas Brine also requested that the defendants "fully disgorge [themselves] of all amounts paid during the arbitration proceedings . . . ."  As previously mentioned, *Gulf Petro* categorized a plaintiff's request for reimbursement of

the costs and fees that it paid in the arbitration as a collateral attack. 512 F.3d at 749.

Texas Brine acknowledges the exclusive-remedy rule from *Hall Street*, but it attempts to distinguish its own claims from those in *Corey*. Texas Brine emphasizes that it successfully obtained vacatur under Section 10, while the plaintiff in *Corey* did not. *Corey*'s holding, though, and the analysis we adopted in *Gulf Petro*, did not turn on whether the plaintiff sought vacatur of the arbitration award. Nothing in our caselaw indicates that the exclusive-remedy rule is merely an exhaustion rule, a prerequisite to filing additional claims in tort, contract, or equity that in essence attack the underlying arbitration. Here, the state court vacated the arbitral awards under Section 10 due to the same wrongdoing that Texas Brine alleges in its new lawsuit.

Congress identified some potential problems that may arise in arbitration in Section 10 of the FAA and provided a limited remedy. The relief, purported harm, and alleged wrongdoing here show that Texas Brine's claims, at heart, are in fact an unauthorized collateral attack on the arbitration. The district court was correct to dismiss the challenge.

### III.  *Texas Brine's Motion to Supplement the Record*

Texas Brine seeks to supplement the record on appeal with recently produced documents from the state-court litigation. The evidence relates to the AAA's administration of the underlying arbitration. Even if admitted, the evidence would not change that Section 10 of the FAA was the appropriate means of challenging the arbitrators' acts, and collateral attacks are not allowed. We DENY the motion to supplement.

AFFIRMED.